# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TYLER TOOMEY and MARKAS SERGALIS, on behalf of himself and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>RIPPLE LABS INC., XRP II, LLC, BRADLEY GARLINGHOUSE, MCO MALTA DAX LIMITED (D/B/A CRYPTO.COM), FORIS DAX GLOBAL LIMITED (D/B/A CRYPTO.COM), FORIS DAX, INC., FORIS, INC., PAYWARD, INC. D/B/A KRAKEN<br><br>          Defendants. | Civil Action No. 3:21-cv-00093 |

# DEFENDANTS RIPPLE LABS INC., XRP II, LLC, AND BRADLEY GARLINGHOUSE'S MOTION TO TRANSFER, DISMISS, OR STAY PLAINTIFFS' SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

III.  PROCEDURAL HISTORY .............................................................................. 3

    A. The Genesis of the California Action. ........................................................... 3

    B. Transfer and Consolidation of *Simmons* and *Bitcoin Manipulation Abatement, LLC*... 4

    C. Appointment of Lead Plaintiff, Motion to Dismiss Briefing, and Discovery in the California Action. ........................................................................................... 5

    D. The SEC Action. ........................................................................................... 6

    E. The Present Action. ...................................................................................... 6

IV.  THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA. ........................................................................ 7

    A. This Case Should be Transferred Pursuant to the First-Filed Rule. ........... 7

    B. Transfer is Also Appropriate Under Section 1404(a). ............................... 12

        i.  The Northern District of California is an Appropriate Venue. ........................ 13

        ii. The Relevant Factors Weigh in Favor of Transfer. ........................................ 14

            a. *The Convenience of the Parties and Witnesses Favors Transfer* ........................... 14

            b. *The Location of Operative Facts, Relevant Documents, and Sources of Proof all Weigh in Favor of Transfer.* ...................................................................... 14

            c. *The Court's Familiarity with Governing Law Does Not Weigh Against Transfer.* 15

            d. *Plaintiffs' Choice of Forum Should be Given Minimal Weight.* ........................... 15

            e. *The Interest of Justice Factor Weighs Heavily in Favor of Transfer.* .................... 16

V.   A STAY PENDING A DECISION ON CLASS CERTIFICATION IN THE CALIFORNIA ACTION IS ALSO APPROPRIATE. .................................... 16

VI.  PLAINTIFFS' CLAIMS AGAINST RIPPLE SHOULD BE DISMISSED WITH PREJUDICE. ................................................................................................... 17

    A. Legal Standard ............................................................................................ 17

    B. Plaintiffs Fail to State a Claim Under Fla. Stat. § 517.211 (Count I). ...... 18

        i.  Plaintiffs Are Secondary Market Purchasers Who Fail To Allege that Ripple Was The Direct Seller or The Direct Seller's Agent. ........................................ 18

        ii. Plaintiffs Fail to State A Claim Based on "Solicitation Liability." ................. 21

    C. Plaintiffs' Remaining Counts Against Ripple Warrant Dismissal. ........................ 25

D.  Plaintiffs Should Not be Granted Leave to Amend a Third Time............................ 27

V.   CONCLUSION ................................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbate v. Wells Fargo Bank, Nat. Ass'n,*
    2010 WL 3446878 (S.D. Fla. Aug. 31, 2010) ........................................................................ 13

*Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.,*
    232 So. 3d 502 (1st DCA 2017) ........................................................................................... 26

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................... 18, 20

*Baatz v. Columbia Gas Transmission, LLC,*
    814 F.3d 785 (6th Cir. 2016) ............................................................................................... 17

*Banegas v. Procter & Gamble Co.,*
    2016 WL 5940104 (S.D. Fla. Sept. 28, 2016) ..................................................................... 11

*In re BitConnect Securities Litig.,*
    2019 WL 9171208 (S.D. Fla. Nov. 15, 2019),
    2019 WL 9104317 (S.D. Fla. Dec. 3, 2019) .................................................................. 23, 24

*Burns v. Gerber Products Co.,*
    922 F. Supp. 2d 1168 (E.D. Wash. 2013) ........................................................................... 11

*Butler v. Yusem,*
    44 So.3d 102 (Fla. 2010) ..................................................................................................... 26

*In re Checking Account Overdraft Litig.,*
    859 F. Supp. 2d 1313 (S.D. Fla. 2012) ................................................................................. 8

*U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc.,*
    290 F.3d 1301 (11th Cir. 2002) ........................................................................................... 25

*Clinton v. Sec. Benefit Life Ins. Co.,*
    2020 WL 6120565 (S.D. Fla. June 29, 2020) .................................................................. 14, 15

*Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.,*
    713 F.3d 71 (11th Cir. 2013) ................................................................................................. 7

*Day v. Taylor,*
    400 F.3d 1272 (11th Cir. 2005) ........................................................................................... 19

*E. F. Hutton & Co., Inc. v. Rousseff,*
    537 So. 2d 978 (Fla. 1989) ................................................................................................... 20

*England v. ITT Thompson Industries, Inc.*,
  856 F.2d 1518 (11th Cir. 1988) ...........................................................................13

*Fed. Trade Commn. v. IAB Mktg. Assoc., LP*,
  2014 WL 11532405 (S.D. Fla. Feb. 6, 2014) .......................................................14

*First Union Discount Brokerage Services, Inc. v. Milos*,
  997 F.2d 835 (11th Cir. 1993) .......................................................................20, 21

*Glasgo v. Uber Techs., Inc.*,
  2019 WL 1998326 (M.D. Fla. May 3, 2019) ................................................7, 8, 9

*Glob. Innovation Tech. Holdings, LLC v. Acer Am. Corp.*,
  634 F. Supp. 2d 1346 (S.D. Fla. 2009) .................................................................10

*Greenfield Children's Partn. v. FriendFinder Networks, Inc.*,
  2014 WL 12205997 (S.D. Fla. Mar. 18, 2014) ....................................................21

*Harvard v. Inch*,
  408 F. Supp. 3d 1255 (N.D. Fla. 2019) ................................................................14

*Hoefer v. U.S. Dept. of Commerce*,
  2000 WL 890862 (N.D. Cal. June 28, 2000) ........................................................15

*I.A. Durbin, Inc. v. Jefferson Nat. Bank*,
  793 F.2d 1541 (11th Cir. 1986) ...........................................................................17

*Jaramillo v. DineEquity, Inc.*,
  664 F. Supp. 2d 908 (N.D. Ill. 2009) ...................................................................11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  2011 WL 4389689 (C.D. Cal. May 5, 2011) ........................................................22

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005) .......................................................................8, 12

*Moghaddam v. Dunkin Donuts, Inc.*,
  2002 WL 1940724 (S.D. Fla. Aug. 13, 2002) .......................................................15

*In re Nematron Corp. Secs. Litig.*,
  30 F. Supp. 2d 397 (S.D.N.Y. 1998) ....................................................................15

*Osborne v. Employee Benefits Admin. Bd. of Kraft Heinz*,
  2020 WL 1808270 (W.D. Pa. Apr. 9, 2020) .........................................................10

*Peterson v. Aaron's, Inc.*,
  2015 WL 224750 (N.D. Ga. Jan. 15, 2015) ..............................................9, 10, 11

*Pinter v. Dahl*,
    486 U.S. 622 (1988)................................................................21, 22, 23

*Poertner v. Gillette Co.*,
    2012 WL 12898875 (M.D. Fla. July 9, 2012) ........................................12

*PPM Am., Inc. v. Marriott Corp.*,
    853 F. Supp. 860 (D. Md. 1994)............................................................22

*Renew Life Formulas, Inc. v. Youngevity Intl., Inc.*,
    2015 WL 12829803 (M.D. Fla. Jan. 5, 2015)........................................9

*Rodriguez v. Granite Services Intl., Inc.*,
    2020 WL 6784116 (M.D. Fla. Nov. 18, 2020) ......................................12

*Rojas v. Am. Honda Motor Co., Inc.*,
    2019 WL 6324616 (S.D. Fla. Nov. 26, 2019)........................................16

*In re Sahlen & Assoc., Inc. Sec. Litig.*,
    773 F. Supp. 342 (S.D. Fla. 1991) ..........................................18, 20, 24

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946)....................................................2, 6, 10, 12, 15

*Securities and Exchange Commission v. Ripple Labs Inc. et al.*,
    No. 20-cv-10832-AT-SN, ECF No. 4 (S.D.N.Y. Dec. 22, 2020)..............1, 2, 6, 27

*TracFone Wireless, Inc. v. Hernandez*,
    196 F. Supp. 3d 1289 (S.D. Fla. 2016) ................................................27

*Trilogy Properties LLC v. SB Hotel Associates LLC*,
    2010 WL 7411912 (S.D. Fla. Dec. 23, 2010) ......................................18

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)............................................................................12

*Wagner v. Lee Cty.*,
    2014 WL 3695383 (M.D. Fla. July 24, 2014) ......................................18

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..............................................16

*Zakinov v. Ripple Labs Inc.*,
    2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ......................................25

*Zakinov v. Ripple Labs Inc.*,
    369 F. Supp. 3d 950 (N.D. Cal. 2019) ..............................................4, 7

**Statutes**

15 U.S.C. § 77l...........................................................................................................22

28 U.S.C. § 1391(b)(2) ...............................................................................................13

28 U.S.C. § 1404(a) ..........................................................1, 5, 7, 10, 12, 13, 16, 28

Class Action Fairness Act of 2005...........................................................................13

Fla. Stat. § 517.211 .............................................................18, 20, 21, 24, 25

Florida Deceptive and Unfair Trade Practices Act .........................................25, 26, 27

Private Securities Litigation Reform Act....................................................................5

Securities Act of 1933 Section 5...............................................................................1

Securities Act of 1933 Section 12.........................................20, 21, 22, 23, 25

Securities Act of 1933 Section 12(a)(1),(2) ......................................................4, 21

Securities Act of 1933 Section 15..............................................................................4

**Other Authorities**

2020 Markets Report is available at https://ripple.com/insights/q3-2020-xrp-
    markets-report/.......................................................................................................19

COINMARKETCAP.COM, https://coinmarketcap.com/currencies/xrp/ (last visited
    Apr. 26, 2021)..........................................................................................................3

Federal Rule of Civil Procedure 9(b)...........................................1, 17, 25, 28

Federal Rule of Civil Procedure 12(b)(6) .........................................1, 17, 28

Federal Rule of Civil Procedure 45 ..........................................................................14

Defendants Ripple Labs Inc., XRP II, LLC, a subsidiary of Ripple, and Bradley Garlinghouse, Ripple's CEO (collectively, "Ripple") move to transfer this case pursuant to the first-filed rule and/or 28 U.S.C. § 1404(a) to the Northern District of California, where a consolidated class action involving nearly identical issues is currently pending. Alternatively, Ripple moves to stay this case pending a determination on class certification in the first-filed class action. Ripple also moves to dismiss all Counts of Plaintiffs' Second Amended Complaint against Ripple (Counts I–VII), with prejudice, pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6).

## I.    INTRODUCTION

XRP is an efficient and scalable digital asset and virtual currency. Beginning in 2018, purchasers of XRP filed six separate actions against Ripple, in state and federal courts in California and New York, alleging that Ripple sold XRP while failing to register it as a security, in violation of federal and state law. All of the pending private actions (except for this case) have been consolidated into a single action in the Northern District of California (the "California Action"). In the California Action, a Lead Plaintiff has been named, two motions to dismiss have been filed and resolved, and discovery has been underway for months. Well after these cases were consolidated and underway, the U.S. Securities and Exchange Commission filed an action in the Southern District of New York alleging that Ripple's distributions of XRP violated Section 5 of the Securities Act of 1933. *Securities and Exchange Commission v. Ripple Labs Inc. et al.*, No. 20-cv-10832-AT-SN, ECF No. 4 (S.D.N.Y. Dec. 22, 2020) (the "SEC Action"). In all of these cases, the central question is whether Ripple's

distributions of XRP constitute "investment contracts" under the test articulated in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946).

Only after all of these prior filed suits were filed, was this instant suit filed. This last-filed action is a copycat lawsuit that should be transferred to the Northern District of California where it can be consolidated with every other pending private action. Plaintiffs' interests are already represented in that case: Plaintiffs and their putative class are members of the putative class in the California Action, and its Lead Plaintiff is a Florida resident. A transfer would conserve judicial resources, avoid duplicative discovery, and eliminate the need for *three* different federal courts to address whether Defendants' distributions of XRP constitute "investment contracts" under *Howey*.

If the case is not transferred, the complaint should be dismissed or stayed pending a decision on class certification in the California Action.

## II.    FACTUAL BACKGROUND

XRP is a digital asset and virtual currency, sometimes called a "cryptocurrency." SAC ¶ 33. XRP is transacted on the cryptographic XRP Ledger, an open-source blockchain technology. *Id.* ¶¶ 40, 46. The XRP Ledger works independently from Ripple; no one party owns or controls the network of peer-to-peer servers that powers XRP Ledger. *See id.* ¶ 42. Unlike many other cryptocurrencies or digital assets, XRP has multiple uses, including in connection with Ripple's On-Demand Liquidity ("ODL") product to aid financial institutions as they transmit money between businesses and effect cross-border payments. *Id.* ¶ 78; *see also SEC v.*

*Ripple Labs Inc. et al.*, No. 20-cv-10832-AT-SN, ECF No. 124, Exs. I, J (describing multiple use cases of XRP that are independent from Ripple's effort).

Plaintiffs allege that Ripple has engaged in sales of XRP since as early as 2013. SAC ¶ 6.  As alleged, XRP can be traded worldwide on more than 100 markets and exchanges, or "digital asset trading platforms."  *Id.* ¶¶ 54, 69.  These exchanges are markets where anyone can trade in XRP, as well as in other digital assets and fiat currencies.  *Id.* ¶¶ 69, 89.  Hundreds of thousands of individuals worldwide hold accounts on these exchanges.  *Id.* ¶ 220.

Plaintiff Tyler Toomey alleges he purchased 135 XRP units on or around November 24, 2020 for $97.80 via the exchange Crypto.com, for approximately $0.72 per unit.[1]  *Id.* ¶ 20.  Plaintiff Markas Sergalis alleges he purchased approximately 500,000 XRP units "from approximately 2017 through the present" via the exchange Kraken.  *Id.* ¶ 21. He does not allege specific dates on which he purchased XRP or how much XRP he purchased on any given date.

## III.   PROCEDURAL HISTORY

### A. The Genesis of the California Action.

This is the latest in a line of actions against Ripple premised on the (erroneous) allegation that Ripple's distributions of XRP constitute "investment contracts" subject to registration as a "security" under federal and state law.  The first action was filed in California state court on May 3, 2018, removed to the Northern District of California

---

[1] As of 9:30pm ET on April 26, 2021, XRP is trading at approximately $1.40 per unit. CRYPTOCOMPARE.COM, https://www.cryptocompare.com/ (last visited Apr. 26, 2021).

on June 1, 2018, and subsequently voluntarily dismissed by the plaintiff. *Coffey v. Ripple Labs Inc.*, No. 4:18-cv-03286-PJH, ECF No. 1.   Three substantially similar actions were filed in California state court on June 5, June 27, and July 3, 2018, and subsequently removed to the Northern District of California.[2]   On March 18, 2019, then-Chief Judge Phyllis Hamilton issued an order formally consolidating the actions, ordering plaintiffs to file a consolidated complaint, and ordering all related actions subsequently filed in, or transferred to, the Northern District to be consolidated with *In re Ripple Labs*, No. 4:18-cv-06753-PJH, referred to herein as the "California Action." ECF No. 35.   A consolidated complaint was filed on August 5, 2019 premised on allegations that Ripple's distributions of XRP constitute "investment contracts," and that Ripple failed to register XRP as a "security" in violation of Section 12(a)(1) and 15 of the Securities Act of 1933, and state securities law.   ECF No. 45, Ex. A (Declaration of Suzanne Nero ¶¶ 4–5, hereinafter "Nero Dec.").

### B. Transfer and Consolidation of *Simmons* and *Bitcoin Manipulation Abatement, LLC.*

In 2020, two additional private actions were filed against Ripple.   First, on March 12, 2020, an action was filed in the Southern District of New York alleging the same federal securities claims as in the California Action.   *Simmons v. Ripple Labs Inc.*, No. 1:20-cv-2236-ER, ECF No. 1.   Ripple indicated to the plaintiff its intent to file a

---

[2] *See In re Ripple Labs*, No. 18-CIV-02845 (San Mateo Sup. Ct. Nov. 7, 2018) (removing *In re Ripple Labs*, composed of *Zakinov* (No. 18-CIV-02845), *Oconer* (No. 18-CIV-03332), and *Greenwald* (No. 18-CIV-03461), to the Northern District of California).   The plaintiff in the very first action voluntarily dismissed his action when his motion for remand was denied.   *Coffey*, No. 4:18-cv-03286-PJH, ECF No. 29.

motion to dismiss, transfer, or stay.  Following a pre-motion conference with the court, Plaintiff Simmons consented to transfer to the Northern District of California under 28 U.S.C. § 1404(a).  *Id.*, ECF No. 12.  It was then consolidated with the California Action.  *In re Ripple Labs*, ECF No. 113; Nero Decl. ¶ 7.

Another action was filed in the Northern District of California on May 1, 2020. *Bitcoin Manipulation Abatement LLC v. Ripple Labs, Inc.*, No. 20-cv-3022-RS, ECF No. 1.  Ripple moved jointly with the plaintiffs in the California Action to consolidate the actions.  The new plaintiffs did not object or otherwise respond, and the case was consolidated.  *In re Ripple Labs*, ECF No. 101;  Nero Decl. ¶ 7.

### C. Appointment of Lead Plaintiff, Motion to Dismiss Briefing, and Discovery in the California Action.

Judge Hamilton appointed Bradley Sostack, a Florida resident, as Lead Plaintiff in the California Action.  *In re Ripple Labs*, ECF No. 60.  Mr. Sostack alleges claims on behalf of a putative class of "All persons or entities who purchased XRP."  *Id.*, ECF No. 87, ¶ 166.  Plaintiffs Toomey and Sergalis are members of the putative class in the California Action, as is every member of their putative class of Florida purchasers (as well as their other proposed classes and subclasses).  One of the Plaintiffs in this case, Markas Sergalis, had already purchased XRP at the time the California Action invited motions for appointment of Lead Plaintiff, but Mr. Sergalis made no motion for appointment.

Discovery in the California Action was automatically stayed under the Private Securities Litigation Reform Act during the pendency of Ripple's motions to dismiss.

The stay was lifted after the court granted in part defendants' motion to dismiss, dismissing Mr. Sostack's consumer protection claims and nearly all of his fraud claim. *In re Ripple Labs*, ECF No. 115. The parties are now engaged in discovery. Nero Decl. ¶¶ 9–10.

### D. The SEC Action.

The central question of whether Ripple's distributions of XRP constitute "investment contracts" under *Howey* is also at issue in a proceeding filed by the SEC, in December 2020, in the Southern District of New York. *SEC v. Ripple Labs Inc. et al.*, No. 20-cv-10832-AT-SN, ECF No. 4. The SEC filed its case in New York well after the private actions had been consolidated in the Northern District of California. Fact discovery in the SEC Action is underway and scheduled to be completed by July 2, 2021. *Id.* at ECF. No. 48.

### E. The Present Action.

Plaintiff Toomey filed this action alleging substantially similar claims to those alleged by Mr. Sostack in the California Action, but under Florida law. After the Court struck his initial complaint as an improper shotgun pleading, ECF No. 4, Toomey filed a First Amended Complaint, ECF No. 5. Ripple informed Toomey that it intended to move to transfer this action to the Northern District of California. Nero Decl. ¶ 17. Plaintiff Toomey declined to consent to transfer. *Id.* ¶ 18. Instead, he served 133 discovery requests on Ripple and filed a Second Amended Complaint, ECF No. 26, adding Mr. Sergalis as a Plaintiff, and also adding several additional defendants. Nero Decl. ¶¶ 19–20.

## IV.   THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA.

The Court should transfer this case to the Northern District of California under either the first-filed rule or 28 U.S.C. § 1404(a).  Plaintiffs' SAC alleges the same theory of liability presented in all of the private actions consolidated in the California Action: that "XRP qualifies as a 'security'" and that "Ripple's past and ongoing sales of XRP constitute the selling of unregistered securities in violation of federal or state law." *Zakinov v. Ripple Labs Inc.*, 369 F. Supp. 3d 950, 952 (N.D. Cal. 2019); *see also* SAC ¶¶ 4, 6 (alleging "XRP tokens are securities" under federal and Florida securities laws and Ripple's "unregistered and unlawful sale of XRP" was in violation of these laws). The California Action is the product of years of judicial efforts to conserve resources and promote efficiency through the consolidation of similar actions.  Plaintiffs' attempt to negate these efforts should fail.

### A. This Case Should be Transferred Pursuant to the First-Filed Rule.

"The first-to-file rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013).  "Under the first-to-file rule, a district court may choose to stay, transfer or dismiss a duplicative later-filed action."  *Glasgo v. Uber Techs., Inc.*, 2019 WL 1998326, at *1 (M.D. Fla. May 3, 2019) (internal citation omitted).  There is a "strong presumption" favoring the forum of the first-filed suit when there are two actions with overlapping issues and parties, and the objecting party must show "compelling

circumstances" to justify exception to that rule.  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

"The first to file rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated."  *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012) (internal citation omitted).  Thus, once a court determines that two suits likely involve substantial overlap, "the proper course of action is for the court to transfer the case to the first-filed court" to determine whether and how the second case should proceed. *Id.* (internal citation and alternation omitted).

When deciding whether the first-to-file rule applies, a court analyzes three factors: (1) chronology of the lawsuits, (2) similarity of the parties, and (3) similarity of the issues.  *Glasgo*, 2019 WL 1998326, at *1.  The court will also consider the rule's primary purpose: conserving judicial resources and avoiding conflicting rulings.  *Id.* Here, all three factors and judicial economy weigh in favor of applying the first-filed rule, and Plaintiff cannot show the requisite "compelling circumstances" that warrant an exception to the rule.

First, the California Action is the first-filed action.  The private lawsuits consolidated in the California Action were filed beginning in 2018, and all were filed before this one.

Second, there is a substantial overlap in the parties.  Plaintiffs (and all potential class members) are subsumed in the putative class in the California Action:

8

| California Action Putative Class Definition | "All persons or entities who purchased XRP." (First Am. Compl. ¶ 166) |
|---|---|
| *Toomey* Putative Class Definition | "[A]ll persons or entities in the State of Florida who purchased XRP." (SAC ¶ 214) |

When "the entire class [plaintiff] purports to represent in this case is subsumed within the putative class"—as it is here—transfer under the first-filed rule is appropriate.[3] *Glasgo*, 2019 WL 1998326, at *1; *see also Peterson v. Aaron's, Inc.*, 2015 WL 224750, at *2 (N.D. Ga. Jan. 15, 2015) ("[I]t is the class, not the class representatives, that are relevant for purposes of the first-to-file rule.").

In addition, Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse are defendants in both actions.  In the SAC, Plaintiffs added Kraken and Crypto.com (and related entities) as defendants (presumably in an effort to avoid transfer, as they were added only after Ripple informed Plaintiffs' counsel of its intent to move to transfer). Nero Decl. ¶ 21.   These late additions do not change the outcome, however, because parties "need not be identical."  *Peterson*, 2015 WL 224750, at *2.  "[A]dditional defendants do not defeat applying the first-filed rule," particularly when the allegations are based on a similar scheme among defendants or the key parties are parties to both suits.  *Renew Life Formulas, Inc. v. Youngevity Intl., Inc.*, 2015 WL 12829803, at *3 (M.D. Fla. Jan. 5, 2015) (applying the first-filed rule despite additional defendants in the later-

---

[3] Any argument that Florida residents are not adequately represented in the California action should be rejected in part because the Lead Plaintiff in the California Action is himself a Florida resident.  *See In re Ripple*, First Am. Compl. ¶ 13 ("Lead Plaintiff Bradley Sostack is an individual who at all times mentioned, was and is a resident of Saint Petersburg, Florida.").

filed action because "the central parties to the underlying dispute . . . are parties to both suits"); *Glob. Innovation Tech. Holdings, LLC v. Acer Am. Corp.*, 634 F. Supp. 2d 1346, 1349 (S.D. Fla. 2009) (transferring the case to the first-filed forum despite the "two cases include different party defendants" because "a strong commonality unites them").[4]  The Ripple defendants are the key defendants in both actions, and here, there is commonality among the claims asserted against Ripple and those asserted against the newly-added defendants because they all turn on application of the *Howey* test to distributions of XRP.

Third, as noted, the legal and factual issues in the two matters are substantially similar because the central issue is the same: whether Ripple's distributions of XRP constitute "investment contracts" under *Howey*.  SAC ¶¶ 1–6; *In re Ripple*, First Am. Compl. ¶ 1.  When the underlying allegations in the litigation are the same, courts will apply the first-filed rule even when there are additional theories of liability.  Indeed, "[f]inding an insubstantial overlap because of the fact that claims are asserted under different . . . laws would defeat the judicial efficiency rationale undergirding the first-filed rule."  *Peterson*, 2015 WL 224750, at *3 (quotation omitted); *see also Osborne v. Employee Benefits Admin. Bd. of Kraft Heinz*, 2020 WL 1808270 (W.D. Pa. Apr. 9, 2020) (transferring two related cases to a consolidated securities class action under the first-

---

[4] Of course, the Court can transfer the entire case, including the non-Ripple defendants, to the Northern District of California under the first-filed rule or Section 1404(a).  *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer *any civil action* . . . .").

filed rule because "while the theories of liability differ[ed] across cases, the factual background and subject matter [was] almost identical").

The fact that Plaintiffs assert solely Florida law claims against Ripple does not defeat application of the first-to-file rule.  To the contrary, where the factual and legal issues are substantially similar, courts routinely apply the rule when the first-filed action asserts federal claims and the later-filed action asserts only state law claims, or when the actions assert the same theory of liability under the laws of different states. *See Peterson*, 2015 WL 224750, at *3 (transferring a case asserting only state claims to the district in which a first-filed case asserted only federal claims); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 916 (N.D. Ill. 2009) (same); *see also Banegas v. Procter & Gamble Co.*, 2016 WL 5940104, at *1 (S.D. Fla. Sept. 28, 2016) (transferring case under first-to-file rule despite the later-filed case bringing claims under a different state's laws); *Burns v. Gerber Products Co.*, 922 F. Supp. 2d 1168, 1172 (E.D. Wash. 2013) (same).

Finally, it is in the interest of judicial economy to transfer this action.  Judge Hamilton has presided over the consolidated class action for nearly three years, ruled on two motions to dismiss, dedicated time to complex facts and novel legal issues, and established a discovery schedule.  Nero Decl. ¶¶ 4–10.  Transferring a case with identical factual allegations and substantially similar legal issues to Judge Hamilton will best serve judicial economy.  *See Jaramillo*, 664 F. Supp. 2d at 916 (finding it in the interest of judicial economy to transfer a case "because it would be wasteful and duplicative to have two different courts familiarize themselves" with the underlying

11

facts even though the first-filed case applied a different state's laws). Furthermore, "it would be patently unfair to require Defendants to litigate the class issues here at the same time as those matters are being litigated in the first-filed action." *Rodriguez v. Granite Services Intl., Inc.*, 2020 WL 6784116, at *4 (M.D. Fla. Nov. 18, 2020).

The above factors clearly weigh in favor of transfer, placing the burden on Plaintiffs to demonstrate that "compelling circumstances" as to why this case should not be transferred. *Manuel*, 430 F.3d at 1135. No such circumstances exist, and this case should therefore be transferred to the Northern District of California to decide whether this action should be dismissed, stayed, or consolidated.[5] *See Rodriguez*, 2020 WL 6784116, at *4 (transferring a class action so the first-filed court could "determine whether [the] later-filed suit should be dismissed, stayed, or consolidated").

## B. Transfer is Also Appropriate Under Section 1404(a).

Alternatively, this Court may transfer this action to the Northern District of California for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

---

[5] In the Case Management Report, Plaintiffs cite to *Poertner v. Gillette Co.*, 2012 WL 12898875 (M.D. Fla. July 9, 2012) as an example of a case where courts decline to transfer matters "under near identical circumstances." ECF No. 25. *Poertner* is distinguishable for two reasons. First, unlike in this case, in *Poertner* "there [was] no overlap between the class of consumers bringing the action in each case." *Poertner*, 2012 WL 12898875 at *2. Second, whereas in *Poertner* the underlying legal claims were based on distinct state laws, *id.* at *1–2, here, by Plaintiffs' own admission, liability on Plaintiffs' state law claims will turn on the very same test derived from federal law—the *Howey* test—that will determine liability on the federal claims in the California Action. *Compare* SAC ¶ 140–88 *with In re Ripple*, First Am. Compl. ¶¶ 127–58 (both alleging that XRP is a security based on the *Howey* analysis).

12

Courts engage in a two-step analysis under § 1404(a) to determine whether transfer is appropriate, asking: (1) whether the action could have been brought in the venue in which transfer is sought and (2) whether convenience and the interest of justice require transfer to the requested forum. *Abbate v. Wells Fargo Bank, Nat. Ass'n*, 2010 WL 3446878, at \*4 (S.D. Fla. Aug. 31, 2010). To determine whether transfer is appropriate, courts consider the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at \*5 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). Courts ultimately have broad discretion to transfer a case under § 1404(a). *England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988).

### i.  <u>The Northern District of California is an Appropriate Venue.</u>

This action could have been brought in the Northern District of California.[6] The Ripple defendants are headquartered or reside there, a substantial part of the events giving rise to Plaintiffs' claims occurred there, and the Ripple defendants are subject to personal jurisdiction there. *See* SAC ¶¶ 22–24. Federal jurisdiction also exists over Plaintiffs' claims under the Class Action Fairness Act of 2005. SAC ¶ 30.

---

[6] The Northern District of California would be an appropriate venue for the additional defendants as well because "a substantial part of the events or omissions giving rise to the claim"—*i.e.*, Ripple's actions related to XRP—occurred in California. *See* 28 U.S.C. § 1391(b)(2). Additionally, Kraken is headquartered in San Francisco, CA. SAC ¶ 29. The additional defendants are subject to federal jurisdiction because Plaintiffs bring federal securities law claims against them. SAC ¶ 30.

### ii.   The Relevant Factors Weigh in Favor of Transfer.

#### a. The Convenience of the Parties and Witnesses Favors Transfer

The Northern District of California is a more convenient location for the defendants, as the Ripple defendants and Kraken are located there. (The Crypto.com defendants are primarily foreign entities that, to our knowledge, have not yet been served.)  While Plaintiffs reside in Florida, there is no reason to believe Plaintiffs cannot meaningfully participate in the California Action.  Indeed, the Lead Plaintiff in the California Action is a Florida resident.  *In re Ripple*, First Am. Compl. ¶ 13. Further, one of the "most important factor[s] in passing on a motion to transfer under § 1404 is the convenience of the witnesses."  *Clinton v. Sec. Benefit Life Ins. Co.*, 2020 WL 6120565, at *4 (S.D. Fla. June 29, 2020), *report and recommendation adopted*, 2020 WL 6120554 (S.D. Fla. July 21, 2020).  Here, many of the most important witnesses will be the Ripple defendants and Ripple employees located in California. [7]

#### b. The Location of Operative Facts, Relevant Documents, and Sources of Proof all Weigh in Favor of Transfer.

The "key factor in determining a motion to transfer venue" is the location of operative facts.  *See Harvard v. Inch*, 408 F. Supp. 3d 1255, 1262 (N.D. Fla. 2019) (internal quotation omitted). "Courts routinely transfer cases when the principal events occurred . . . in another district."  *Fed. Trade Commn. v. IAB Mktg. Assoc., LP*, 2014 WL 11532405, at *3 (S.D. Fla. Feb. 6, 2014) (quotation omitted).  In securities

---

[7] The availability of process to compel potentially unwilling witnesses located in California to testify also weighs in favor of transfer.  *See* Fed. R. Civ. Pro. 45.

lawsuits, claims based on alleged misrepresentations and omissions "are deemed to occur in the district where they are transmitted or withheld, not where they are received." *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998). Here, many of the operative facts took place in the Northern District of California, where Ripple is located, and Ripple's documents are located there.  Plaintiffs make no allegations of events that occurred, or documents that exist, in Florida.

### c.  The Court's Familiarity with Governing Law Does Not Weigh Against Transfer.

That this lawsuit alleges Florida state law claims does not weigh heavily against transfer because district courts are capable of applying the law of other states.  *See Clinton*, 2020 WL 6120565, at *7 (collecting cases).  Further, Plaintiffs admit that the analysis of whether Ripple's distributions of XRP are an "investment contract" (and therefore a security) under Florida law mirrors the *Howey* test derived from federal law, *Howey*, 328 U.S. at 299, SAC ¶ 140.  Because "the gravamen of the case involves federal law," Plaintiffs' choice to allege only "a state law claim is usually not a significant consideration of a motion to transfer venue."  *Hoefer v. U.S. Dept. of Commerce*, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000).

### d.  Plaintiffs' Choice of Forum Should be Given Minimal Weight.

A plaintiff's choice of forum should be given less weight where, as here, the "operative facts occurred outside the district chosen by Plaintiffs."  *Moghaddam v. Dunkin Donuts, Inc.*, 2002 WL 1940724, at *2 (S.D. Fla. Aug. 13, 2002); *see also Clinton*, 2020 WL 6120565, at *9 (a plaintiff's choice of forum was entitled to less deference

when the case was a "putative class action that involve[d] products that were available for sale and purchases across the country"). In addition, Plaintiffs forum-shopped to try to avoid the Northern District of California by, for example, declining to assert federal claims against Ripple. This also means that Plaintiffs' choice of forum should be given less weight. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (a plaintiff's forum choice warrants less deference if "there is any indication that plaintiff's choice of forum is the result of forum shopping").

> ### e. The Interest of Justice Factor Weighs Heavily in Favor of Transfer.

The interest of justice factor weighs heavily in favor of transfer given the status of the California Action and efficiencies that would result from transfer and consolidation. *See, e.g.*, *Rojas v. Am. Honda Motor Co., Inc.*, 2019 WL 6324616, at *4 (S.D. Fla. Nov. 26, 2019) (finding it more judicially efficient to transfer a case to California because it was "the trial court with the most knowledge of the cases"). Balancing all relevant factors in the Section 1404(a) analysis, transfer to the Northern District of California is appropriate.

## V.   A STAY PENDING A DECISION ON CLASS CERTIFICATION IN THE CALIFORNIA ACTION IS ALSO APPROPRIATE.

If the Court declines to transfer this action to the Northern District of California, Ripple respectfully requests a stay of all proceedings pending a decision on class certification in the California Action.[8] The Court has broad authority to order a stay

---

[8] The Lead Plaintiff's motion for class certification in the California action is due on August 26, 2022, and the motion will be fully briefed on October 21, 2022. *In re Ripple*, ECF No. 124.

under either the first-filed rule or its general discretion to manage its docket, particularly when such a stay would conserve judicial resources and avoid duplicative actions. *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1551–52 (11th Cir. 1986) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Glasgo*, 2019 WL 1998326, at *1 (noting a stay is an appropriate remedy under the first-filed rule)).

It would be efficient to allow the California Action to proceed because Plaintiffs are putative class members in the California Action, and the relief that is sought is equivalent. If the California Action certifies a class that includes Plaintiffs (and the putative class they seek to represent here), then the issues in this action that remain will be significantly narrowed or resolved. To allow both cases to proceed "could force resource-draining duplicative class actions to proceed simultaneously[, which] would unduly burden the courts, and could be used as a vexatious litigation tactic." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016).[9]

## VI.   PLAINTIFFS' CLAIMS AGAINST RIPPLE SHOULD BE DISMISSED WITH PREJUDICE.

Regardless of whether this action is transferred or stayed, the allegations in the SAC do not meet the requirements of Rule 12(b)(6) and 9(b) and should be dismissed.

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, each claim must be plausible and permit a reasonable inference that the defendant is liable for the alleged misconduct.

---

[9] While Ripple may be forced to defend duplicative litigation if Plaintiffs choose to opt out of the California action after the class is certified, "it should not prospectively prohibit courts' efforts to conserve resources by applying the first-to-file rule." *Baatz*, 814 F.3d at 791.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Legal conclusions couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments." *Wagner v. Lee Cty.*, 2014 WL 3695383, at *2 (M.D. Fla. July 24, 2014).

### B.  Plaintiffs Fail to State a Claim Under Fla. Stat. § 517.211 (Count I).

Plaintiffs' first cause of action against Ripple arises under the Florida Securities and Investor Protection Act ("FSIPA") § 517.211, which provides a private cause of action for the sale of an unregistered security.  FSIPA provides that a purchaser of an unregistered security is able to recover from either (a) the "person making the sale," or (b) a "director, partner, or agent of or for the seller."  § 517.211(1).  The "person making the sale" is the direct seller of the security, with whom the purchaser is "in privity." *In re Sahlen & Assoc., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 (S.D. Fla. 1991); *see also Trilogy Properties LLC v. SB Hotel Associates LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010) ("buyer/seller privity must exist").  Plaintiffs fail to state a claim under FSIPA because they fail to allege that Ripple was either the "person making of the sale" of the XRP that Plaintiffs' purchased, or that it was the direct seller's agent.

### i.  <u>Plaintiffs Are Secondary Market Purchasers Who Fail To Allege that Ripple Was The Direct Seller or The Direct Seller's Agent.</u>

In a typical § 517.211 claim, the plaintiff purchased the security at issue directly from the defendant.  The plaintiff is in privity with the defendant and is suing to recover the money that he or she paid to that defendant.  In some instances, the plaintiff also names as defendants the direct seller's agents—such as the seller's broker-dealer,

directors, or executives—which FSIPA permits.  Here, in contrast, Plaintiffs are secondary market purchasers who fail to allege that Ripple was either the direct seller of the XRP that they purchased, or the direct seller's agent.

Toomey alleges he purchased XRP on or around November 24, 2020, but he does not allege facts sufficient to create a reasonable inference that Ripple was the seller.  SAC ¶ 20.  Indeed, Ripple was not selling XRP at that time.  *See* 2020 Q3 Market Reports, incorporated by reference at SAC ¶¶ 121, 164 ("Similar to recent quarters, Ripple did not sell programmatically" (*i.e.*, to the public)).[10]  The latest date of Ripple's sales alleged in the SAC is August 2020, several months before Toomey's alleged purchase, and those allegations discussed distributions of XRP through Ripple's "xPring" initiative, not direct sales to purchasers like Toomey.  SAC ¶¶ 62–90.

Sergalis alleges that he purchased XRP "from approximately 2017 through the present," SAC ¶ 21, but like Toomey, he does not allege that Ripple was the direct seller of the XRP units that he purchased.  Indeed, neither Plaintiff alleges the identity of the direct seller of their XRP units, nor does either allege that Ripple acted as the "agent" of the unidentified sellers.

---

[10] Documents whose contents are alleged in a complaint and not questioned by any party are considered incorporated by reference and may be considered on a motion to dismiss without converting the motion into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  Ripple's third quarter 2020 Markets Report is available at https://ripple.com/insights/q3-2020-xrp-markets-report/.

Rather, Plaintiffs' allegations indicate that both Plaintiffs purchased XRP on the secondary market, and not from Ripple.  XRP has been publicly trading since 2013, and Plaintiffs allege they purchased XRP on two public exchanges:  Crypto.com and Kraken.  SAC ¶¶ 20–21.  Plaintiffs allege the existence of "an active, liquid XRP secondary trading market."  SAC ¶ 101; *see also* SAC ¶ 111.  Plaintiffs further allege that Ripple's own sales of XRP constituted a tiny fraction of the overall trading volume in the liquid secondary market:  when Ripple sold XRP, its market makers were "selling XRP in amounts no greater than a certain percentage of XRP's daily volume, generally between 10 and 25 basis points."  SAC ¶ 115.  In other words, by Plaintiffs' own admission, Ripple's sales of XRP accounted for between 0.1% to 0.25% of XRP market volume.

Given that Ripple did not engage in any public sales in November 2020 (when Toomey allegedly purchased) and that it accounted for only a miniscule percentage of trades from 2017 to 2020 (when Sergalis allegedly purchased), one cannot "reasonably infer" that Ripple was the direct seller of the XRP that Plaintiffs purchased.  Therefore, dismissal is warranted.  *See Ashcroft*, 556 U.S. at 678.  Simply put, Plaintiffs are secondary market purchasers, and § 517.211 is not, and never was, intended for use by secondary market purchasers.[11]

---

[11] Section 517.211 is analogous to Section 12 of the Securities Act of 1933.  *E. F. Hutton & Co., Inc. v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989). It is well established that Section 12 is available solely to those who purchased in an initial offering, and not a secondary market.  *First Union Discount Brokerage Services, Inc. v. Milos*, 997 F.2d 835, 843–44 (11th Cir. 1993) ("[S]ection 12(2) of the 1933 Act does not apply to aftermarket transactions"); *see also In re Sahlen*, 773 F. Supp. at 363 ("Courts interpreting [Section 12] have confined its application to initial offerings of securities, finding that it was not

## ii. __Plaintiffs Fail to State A Claim Based on "Solicitation Liability."__

Plaintiffs allege that Ripple is liable under § 517.211 because Ripple "actively solicited" purchases of XRP through "public statements." SAC ¶¶ 229, 233. This is a gross misapplication of "solicitation liability" that would eviscerate the limitation of liability under § 517.211 to direct sellers and their agents. If general public statements regarding XRP were sufficient to render Ripple liable under § 517.211 to *any* purchaser, then Ripple would bear liability for all secondary market purchases. There is no precedent for that under Florida law, nor is there any such precedent under the federal corollary, Section 12 of the Securities Act, from which Florida courts adopted "solicitation liability." Rather, as noted *supra* at footnote 11, it is firmly established that secondary market purchasers cannot recover under Section 12.[12]

The genesis of "solicitation liability" is a Supreme Court decision holding that a "seller" of a security subject to liability under Section 12 includes not only the person passing title to the buyer, but also certain persons who "solicit" that purchase. *Pinter v. Dahl,* 486 U.S. 622, 647 (1988). Critically, Section 12(a)(2) of the Securities Act

---

intended to pertain to secondarily traded securities."); *Greenfield Children's Partn. v. FriendFinder Networks, Inc.*, 2014 WL 12205997, at *4 (S.D. Fla. Mar. 18, 2014), *aff'd in part, appeal dismissed in part*, 590 Fed. App'x. 854 (11th Cir. 2014) (unpublished) ("Plaintiffs concede that Plaintiff GCP lacks standing to pursue a claim under Section 12, since it purchased its shares in the secondary market.").

[12] That § 517.211 standing is limited to direct purchasers—to the exclusion of secondary market purchasers—is further supported by the statute's damages provision, which states that a purchaser may sue "in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security." Fla. Stat. § 517.211(1). If a defendant was not involved in the sale, there is nothing for him or her to rescind. Courts hold that where a plaintiff fails to allege a transaction in which the defendant or its agents participated, "there is nothing to rescind" and no "particular transaction from which damages may be discerned." *First Union*, 997 F.2d at 848.

states that "[a]ny person who . . . offers or sells a security" in violation of the Act's registration requirement "shall be liable . . . to the person purchasing such security *from him.*"  15 U.S.C. § 77l (emphasis added).  Adhering to this statutory language, *Pinter* cabined "solicitation liability" to solely those sellers "from whom the buyer purchase[d]."  *Pinter*, 486 U.S. at 645 (internal quotation omitted).  This includes an agent of the seller who solicited the purchase on behalf of the seller because that agent would "be thought by the buyer, to be among those 'from' whom the buyer 'purchased.'"  *Id.* at 644.  The Court further noted that "[t]ypically, a person who solicits the purchase will have sought or received a personal financial benefit from the sale."  *Id.* at 654.

Pinter and its progeny stand for the proposition that a "seller" under Section 12 can include a person who directly solicited the sale to the plaintiff, where the purchaser would believe he or she was buying the security "from" that person.  *Pinter* does *not* stand for the proposition that an issuer making generalized public statements is liable under Section 12 to all secondary market purchasers.[13]  *See, e.g.*, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *9 (C.D. Cal. May 5, 2011) (making public, non-targeted statements on which plaintiff relied does not amount to solicitation under *Pinter*); *PPM Am., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 874 (D. Md. 1994) (same).

---

[13] *Pinter* made clear that Section 12 "imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers.  Thus, a buyer cannot recover against his seller's seller."  *Pinter*, 486 U.S. at 644 n.21.

An instructive case is *In re BitConnect Securities Litig.*, 2019 WL 9171208 (S.D. Fla. Nov. 15, 2019), *motion to certify appeal denied*, 2019 WL 9104317 (S.D. Fla. Dec. 3, 2019), in which plaintiffs who were allegedly defrauded in a cryptocurrency Ponzi scheme brought federal securities claims under Section 12. Plaintiffs named as a defendant the entity from which they had directly purchased the "BitConnect Coins." Plaintiffs also went further, however, naming as defendants two individuals (Arcaro and Maasen) alleged to have participated in the scheme by acting as promoters for BitConnect. The *BitConnect* court dismissed claims against these two individuals because the plaintiffs "failed to allege that they purchased securities *as a result of* Arcaro and Maasen's *personal* solicitations." *Id.* at *5 (emphasis original). The court noted that Plaintiffs sought to "establish liability on the sole basis that they encountered publicly available content created by [defendants] while researching the BitConnect Investment Programs." *Id.* The plaintiffs pleaded no relationship between themselves and the defendants, nor did they allege the defendants "engaged in active efforts to urge or persuade any of the Plaintiffs to invest in BCC." *Id.*[14] Dismissal in *BitConnect* was consistent with *Pinter* because the essential requirement of Section 12—that plaintiffs purchase the security "from" the defendants—was missing. *See Pinter*, 486 U.S. at 643 ("The second clause of § 12(1), which provides that only a defendant 'from'

---

[14] The court again dismissed the claims in an amended complaint, holding that defendants' public statements did not constitute personal solicitation. *Id.* at *6. ("[T]he SAC fails to allege that either Defendant engaged in active efforts to urge or persuade any of the Plaintiffs to invest in BitConnect. Rather, Plaintiffs attempt to establish liability simply because certain plaintiffs encountered and interacted with publicly available content made by [defendants.]").

whom the plaintiff 'purchased' securities may be liable, narrows the field of potential sellers.").

Here, Plaintiffs allege liability under Florida law based on the very type of generalized public statements that in *BitConnect* were insufficient to establish "solicitation liability" under federal law.  *E.g.*, SAC ¶¶ 59-60, 129, 160, 170.  In the SAC, Plaintiffs cite a case applying "solicitation liability" under Florida law but that case did not involve secondary market purchasers or liability premised on generalized public statements.  SAC ¶ 229.  Rather, in *Hilliard v. Black*, the court found that the plaintiff adequately alleged that two defendants—Black and PMI—had "actively solicited the sale of [fraudulent] Cash 4 Titles securities to Plaintiffs," by making false statements *directly to* plaintiffs, and by pocketing a share of the investment proceeds from such investments.  125 F. Supp. 2d 1071, 1083 (N.D. Fla. 2000); *id.* at 1075 (listing false statements that Black and Hillard made to the plaintiff, and noting that other defendants who participated in the scheme "offered to pay Black, Franklin and clients of PMI a three percent monthly return on any funds invested").[15]  By contrast, Plaintiffs here do not allege that Ripple specifically solicited Plaintiffs' sale, nor do they allege that Ripple received money from Plaintiffs' purchase.   Accordingly,

---

[15] Similarly, in *Sahlen*, the court granted a motion to dismiss where the plaintiff "fail[ed] to allege from whom they bought the SAI securities," and the court further noted that had the plaintiff bought the securities from SAI, "it would be a question of fact whether any of the officers and directors of SAI or whether PMM, as an agent of SAI, had sufficient participation in the sales to hold it liable under § 517.211."  *In re Sahlen*, 773 F. Supp. at 372.  *Hilliard* and *Sahlen* both demonstrate that "solicitation liability" may exist solely where the defendant actively participated in the specific investment at issue and benefited financially in some direct way from that investment.

Plaintiffs fail to state a claim that Ripple is liable under § 517.211 for "soliciting" their secondary-market purchases.[16]

### C.  Plaintiffs' Remaining Counts Against Ripple Warrant Dismissal.

In Count II, Plaintiffs contend that Ripple violated Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") by failing to disclose the "true nature" of XRP and omitting to disclose information that would have been contained in a registration statement had XRP been registered as a security.  SAC ¶ 243.  These allegations fail to satisfy Federal Rule of Civil Procedure 9(b) because they do not identify with particularity the information that was misleadingly omitted.  *U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (the plaintiff must state "precisely" what omissions were made, and "the manner in which they misled" the plaintiff).  To satisfy Rule 9(b), Plaintiffs must identify precisely what information regarding the "true nature" of XRP Ripple omitted, and how Plaintiffs were misled by these omissions.  Plaintiffs fail to do this.  Quite to the contrary, Plaintiffs instead allege that Ripple made a number of representations revealing the "nature" of XRP, including alleged representations concerning how Ripple used proceeds from XRP sales to fund its operations (SAC ¶¶ 156–61), Ripple's desire for XRP to succeed (*id.*), Ripple's extensive holdings of XRP (*id.* at ¶ 162), and other

---

[16] In her Order granting in part and denying in part Ripple's motion to dismiss the California Action, Judge Hamilton wrote a footnote suggesting that Ripple could potentially bear liability as a "remote seller" under the solicitation theory.  *Zakinov v. Ripple Labs Inc.*, 2020 WL 922815, at *12 n.6 (N.D. Cal. Feb. 26, 2020) ("[w]ithout more, the court rejects any suggestion that defendants may not be held liable under a solicitation theory because they are remote sellers").  It cannot be the case that, in a footnote, Judge Hamilton sought to upset the settled law that Section 12 liability does not extend to secondary market purchasers.  *See id.*; *see also supra*, at 20–21.

representations that Plaintiffs allege created an expectation of profits derived from Ripple's efforts (*id.* at ¶¶ 163–87).  In the face of these extensive allegations regarding Ripple's public representations and actions, it is not at all evident from the face of the pleading what Ripple omitted to disclose regarding XRP's "true nature."

Plaintiffs further contend that Ripple violated FDUPTA because it (a) violated FSIPA, as alleged in Count I; and/or (b) affirmatively misrepresented that XRP is not a security.  For the reasons stated above, however, Plaintiffs fail to state a claim that Ripple violated FSIPA, and Ripple's affirmative representation that XRP is "not a security" is neither "unfair" nor "deceptive" because it is a statement as to a legal conclusion that Ripple reasonably believed to be (and is) accurate.  Plaintiffs fail to allege how they were materially misled by this statement given all that was public regarding XRP.

Plaintiffs' claims for Fraudulent and Negligent Misrepresentation (Counts III and IV) fail for similar reasons.  As with Count II, Plaintiffs fail to plead with particularity what Ripple omitted concerning the "true nature" of XRP.  With respect to Ripple's affirmative statement that XRP was not a security, Plaintiffs fail to allege facts or a supporting inference that Ripple had the requisite level of scienter.  To state a claim for fraudulent or negligent misrepresentation, Plaintiffs must allege that Ripple either *knew* that XRP was a security (for Count III), or that it *should have known* (for Count IV). *See Butler v. Yusem,* 44 So.3d 102, 105 (Fla. 2010); *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505 (1st DCA 2017).  Plaintiffs fail to allege with particularity, as is required, facts that permit a reasonable inference

that Ripple knew or should have known that XRP is a security.[17]   Indeed, even now, Ripple continues to vigorously assert that XRP is *not* a security.

Plaintiffs' claims for Conversion (Count V), Unjust Enrichment (Count VI) and Money Had and Received (Count VII) each fail for two independent reasons.  First, since it is plain from the face of the Second Amended Complaint that Plaintiffs are secondary market purchasers, it is not plausible that Plaintiffs transferred any money to Ripple:  the money that Plaintiffs paid for the XRP that they purchased went to the sellers of that XRP, not Ripple.  Second, each of these claims requires an unauthorized act.  *See, e.g., TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1299 (S.D. Fla. 2016) ("Under Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein.").  But here, Plaintiffs have failed to allege any unauthorized or improper act because their claims for violations of FSIPA and FDUPTA fail for the reasons stated above.

### D. Plaintiffs Should Not be Granted Leave to Amend a Third Time.

This Court dismissed Toomey's original complaint as an improper "shotgun" pleading.  ECF No. 4.  Plaintiff then filed a First Amended Complaint that merely changed the phrasing in each paragraph that incorporated previous paragraphs into

---

[17] Plaintiffs allege that the SEC's Complaint in the SEC Action says that the Ripple Defendants received legal advice that XRP was a security, SAC ¶ 250, but this is incorrect.  Instead, the SEC's Complaint merely alleges that Ripple was advised that there was a risk the SEC might consider XRP a security under certain circumstances.  Thus, one cannot plausibly infer from the SEC's Complaint that Ripple knew or should have known it was not a security.

each of his claims.  First Amended Complaint, ECF No. 5, ¶¶ 195, 202, 214, 218, 222, 228, 234.  Ripple advised Toomey that the First Amended complaint was deficient under Rule 12(b)(6) and Rule 9(b), and that he lacked standing under § 571.211.  Nero Decl. ¶ 16.  Plaintiffs then filed the SAC, which remains deficient.  Plaintiffs' claims against Ripple should therefore be dismissed with prejudice.

## V.    CONCLUSION

Based on the foregoing, Ripple respectfully requests that this Court transfer this case to the Northern District of California under the first-filed rule or 28 U.S.C. § 1404(a).  Alternatively, Ripple requests that claims against Ripple be dismissed with prejudice, or that the matter be stayed.

DATED: April 26, 2021

Respectfully submitted,
*/s/ Damien J. Marshall*

Damien J. Marshall

DAMIEN J. MARSHALL (FBN: 191302)
dmarshall@kslaw.com
**KING & SPALDING LLP**
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 566-2100; Fax: (212) 556-2222

SUZANNE E. NERO (pro hac vice)
snero@kslaw.com
**KING & SPALDING LLP**
50 California Street
Suite 3300
San Francisco, CA 94111
Tel: (415) 318-1200; Fax: (415) 318-1300

ANDREW J. CERESNEY (pro hac vice)
aceresney@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000; Fax: (212) 909-6836

*Counsel for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)</u>

I certify that, pursuant to Local Rule 3.01(g), counsel for Ripple conferred with counsel for Plaintiffs prior to the filing of this motion, and counsel for Plaintiffs stated that Plaintiffs opposes this motion.  Specifically, on February 9, 2021, Ripple sent a letter to Plaintiffs' counsel outlining certain defects in his complaint and indicating that Ripple intended to move to transfer this action.  On February 16, 2021, Plaintiffs' counsel responded with a letter of their own indicating they disagree with Ripple's position on the complaint and that Plaintiffs opposed transfer.  On March 4, 2021, counsel for Defendants then conferred telephonically with Plaintiffs' counsel, and Plaintiffs' counsel once again affirmed that Plaintiffs opposed this motion on all grounds.

*/s/ Damien J. Marshall*
Damien J. Marshall

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 26th day of April, a copy of the foregoing was electronically filed with the Clerk of this Court using the CM/ECF system, which will notify all counsel of record.

*/s/ Damien J. Marshall*
Damien J. Marshall

30