UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TYLER TOOMEY and MARKAS
SERGALIS, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

 v.

RIPPLE LABS, INC., XRP II, LLC,
BRADLEY GARLINGHOUSE,
MCO MALTA DAX LIMITED
(D/B/A CRYPTO.COM), FORIS
DAX GLOBAL LIMITED (D/B/A
CRYPTO.COM), FORIS DAX,
INC., FORIS, INC.,

    Defendants.

Civil Action No. 3:21-cv-00093-
BJD-JBT

**PLAINTIFFS TYLER TOOMEY AND MARKAS SERGALIS' OPPOSITION
TO DEFENDANTS RIPPLE LABS INC., XRP II, LLC, AND BRADLEY
GARLINGHOUSE'S MOTION TO STAY DISCOVERY**

Sarah N. Westcot (FBN: 1018272)
BURSOR & FISHER, P.A.
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

I.     INTRODUCTION ................................................................................. 1

II.    ARGUMENT ....................................................................................... 4

    A.     The PSLRA Does Not Mandate A Stay Of Discovery ......................... 4

        1.     *The PSLRA Stay Provision Does Not Apply To Ripple* ..................... 4

        2.     *Plaintiffs Are Not Attempting to Circumvent the PSLRA* ................. 8

    B.     A Stay is Not Warranted Pursuant to this Court's Inherent Powers ...... 9

    C.     A Stay Will Prejudice Plaintiffs ........................................................ 17

III.   CONCLUSION .................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Balestra v. ATBCOIN LLC*,
   380 F. Supp. 3d 340 (S.D.N.Y. 2019) ...................................................................12

*Blair v. Wachovia Mortg. Corp.*,
   2012 WL 868878 (M.D. Fla. Mar. 14, 2012)........................................................14

*Cabrera v. Progressive Behav. Sci., Inc.*,
   331 F.R.D. 185 (S.D. Fla. 2019) ..........................................................3, 9, 10, 17

*Centennial Bank v. ServisFirst Bank Inc.*,
   2016 WL 7423139 (M.D. Fla. Mar. 23, 2016) .....................................................10

*Fazio v. Lehman Bros.*,
   2002 WL 32121836 (N.D. Ohio May 16, 2002) ....................................................8

*Feldman v. Flood*,
   176 F.R.D. 651 (M.D. Fla. 1997)..........................................................................10

*Hilliard v. Black*,
   125 F. Supp. 2d 1071 (N.D. Fla. 2000) ................................................................11

*Hillis v. Heineman*,
   2009 WL 798872 (D. Ariz. Mar. 25, 2009) ...................................................5, 8, 9

*Hodges v. Monkey Cap., LLC*,
   2018 WL 9686569 (S.D. Fla. Aug. 14, 2018) ................................................14, 15

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
   773 F. Supp. 342, 371–73 (S.D. Fla. 1991) .........................................................11

*In re Transcrypt Int'l Sec. Litig.*,
   57 F. Supp. 2d 836 (D. Neb. 1999).........................................................................2

*Kircher v. Putnam Funds Tr.*,
   547 U.S. 633, 126 S. Ct. 2145, 165 L. Ed. 2d 92 (2006) .......................................9

*Koock v. Sugar & Felsenthal, LLP*,
   2009 WL 2579307 (M.D. Fla. Aug. 19, 2009) .......................................................5

*Levinson v. Pscc Servs., Inc.*,
   2009 WL 10690157 (D. Conn. Sept. 16, 2009).......................................................5

*McCabe v. Foley*,
   233 F.R.D. 683 (M.D. Fla. 2006)............................................................................3

*MindbaseHQ LLC v. Google LLC*,
   2021 WL 680887 (S.D. Fla. Feb. 22, 2021) .........................................................16

*Nichting v. DPL Inc.*,
   2011 WL 2892945 (S.D. Ohio July 15, 2011) .......................................7

*Pinter v. Dahl*,
   486 U.S. 622, 108 S. Ct. 2063, 100 L.Ed.2d 658 (1988) ................ 11, 12

*Poertner v. Gillette Co.*,
   2012 WL 12898875 (M.D. Fla. July 9, 2012) ....................................16

*Ray v. Spirit Airlines, Inc.*,
   2012 WL 5471793 (S.D. Fla. Nov. 9, 2012) ......................................10

*Seippel v. Sidley, Austin, Brown & Wood LLP*,
   2005 WL 388561 (S.D.N.Y. Feb. 17, 2005) .......................................8

*Sprint Sols., Inc. v. Cell Xchange, Inc.*,
   49 F. Supp. 3d 1074 (M.D. Fla. 2014) ............................................10

*Tobias Holdings, Inc. v. Bank United Corp.*,
   177 F. Supp. 2d 162 (S.D.N.Y. 2001) ......................................passim

*Weinberg v. Advanced Data Processing, Inc.*,
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) ...........................................15

*Zakinov v. Ripple Labs, Inc.*,
   2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ...................................3, 13

## STATUTES

15 U.S.C § 77z–1 .......................................................................1, 4

28 U.S.C. 1332 ...............................................................................8

28 U.S.C. § 1404(a) .......................................................................16

## RULES

Fed. R. Civ. P. 9(b) .......................................................................15

## I.    INTRODUCTION

Defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse (collectively "Ripple") seek an order staying discovery in this action until the Court rules on Ripple's Motion to Transfer, Dismiss, or Stay this Action (ECF No. 45) ("MTD"), pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C § 77z–1, and the Court's inherent authority.  Ripple is not entitled to a stay on either ground.

First, Plaintiffs Markas Sergalis and Tyler Toomey ("Plaintiffs") do not bring any claim "arising under" federal securities laws against Ripple.  Instead, Plaintiffs bring only state law causes of action under Florida law against Ripple, on behalf of a putative class of Florida XRP purchasers.  This Court has an independent basis of jurisdiction for Plaintiffs' state law claims (diversity jurisdiction), as pled in Plaintiffs' Second Amended Class Action Complaint ("SAC") (ECF No. 26).  *See* SAC at ¶ 30.[1]  As such, there is no basis for a stay under the PSLRA.  Indeed, this fact is underscored by the fact that Ripple did not seek a stay when the original complaint was filed.  Ripple is only now seeking to shoehorn a discovery stay based on federal

---

[1] Ripple argues that "Courts routinely apply the PSLRA to stay discovery of pendant state claims, including discovery sought from defendants sued solely on state claims."  *See* Defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse's Motion To Stay Discovery ("Ripple Mot."), at 2.  But the Court does not have "pendent" (or supplemental) jurisdiction over the claims against Ripple.  The Court's basis of jurisdiction is diversity jurisdiction, as clearly pled by Plaintiffs (and not disputed by Ripple).  Indeed, the claims against Ripple could not possibly be pendent or supplemental considering there isn't even a cause of action pled against Ripple for violation of federal securities laws.  As such, Ripple's argument completely misses the mark, as explained in a well-reasoned opinion denying a PSLRA stay where there were other state law claims that had an independent jurisdictional basis.  *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 168 (S.D.N.Y. 2001) ("Here, plaintiff's state law claims do not mirror the federal securities claims but represent legally cognizable, substantive causes of action. Furthermore, as noted earlier, these claims are not truly pendent claims as this Court has independent jurisdiction—diversity of citizenship—requiring it to hear those claims.").

securities claims brought by Plaintiffs against other Defendants, not Ripple.  But it is well settled that Plaintiffs "should not be penalized for bringing both . . . federal securities claims and related state common law claims in one federal action."  *Tobias Holdings, Inc.*, 177 F. Supp. 2d at 168.

Second, the circumstances of the present matter underscore the absurdity of Ripple's request.  The general basis for a PSLRA discovery stay is to protect "defendants in such cases from being subjected to extortionate demands for settlement on behalf of class plaintiffs simply because of the high costs associated with discovery in these cases; protection of the corporate defendants from federal judges' reluctance to impose Rule 11 sanctions in frivolous lawsuits; and protection of the corporate defendants from plaintiffs' counsel 'discovering' their way into facts which could allow them to amend an initially frivolous complaint so as to state a claim."  *In re Transcrypt Int'l Sec. Litig.*, 57 F. Supp. 2d 836, 841 (D. Neb. 1999).  None of these concerns are relevant to the present matter.  The plaintiff in the California action, *Zakinov et al v. Ripple Labs, Inc. et al.*, Case No. 4:18-cv-06753-PJH (N.D. Cal), brings claims under federal securities laws and California state law (not Florida law as alleged in this matter), and has already overcome a motion to dismiss, obviating any need for a protective discovery stay for Ripple.  Further, that the United States Security and Exchange Commission ("SEC") is actively pursuing a case against Ripple for sale of unregistered securities undermines any misguided notion that the merits of the matter warrant a protective stay.  In short, as Ripple

already received a PSLRA stay in the *Zakinov* matter and lost its motion to dismiss, and is now in discovery, there is no reason to reapply a stay in this matter.

<u>Third</u>, a stay would not serve the interests of judicial economy or efficiency.  It is well settled law in the Eleventh Circuit and Florida federal courts that "[a] stay of discovery pending the determination of a motion to dismiss . . . is the exception rather than the rule." *Cabrera v. Progressive Behav. Sci., Inc.*, 331 F.R.D. 185, 186 (S.D. Fla. 2019).  "A request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the entire case." *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006).  Here, Ripple's motion to dismiss is highly unlikely to be successful, which weighs heavily against a stay.  *Cabrera*, 331 F.R.D. at 186 ("Based on the Court's review of the motion to stay and an initial review of the motion to dismiss, the Court will not grant a stay of discovery. Dismissal of the case with prejudice is not a foregone conclusion.").  Here, Ripple's motion to dismiss does not deny XRP is an unregistered security; instead, Ripple argues that Plaintiffs are not entitled to relief under the Florida Securities and Investor Protection Act ("FSIPA") § 517.211 because they cannot be liable under a solicitation theory.  As Ripple concedes, FSIPA looks to federal law for the purpose of determining solicitation liability.  *See* MTD at 21-22.  Ripple raised the exact same privity/solicitation argument in the California action, and the Court concluded that the plaintiff stated a claim because Ripple "systematically marketed XRP and financially benefited from such efforts," which was "more than sufficient to establish their status as sellers under a solicitation theory."  *See Zakinov v. Ripple Labs, Inc.*,

2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020).  Plaintiffs' SAC is replete with similar allegations.  Given that Ripple's main argument for dismissal has already been rejected under the same legal analysis, a stay is not justified based on a preliminary peek at the motion to dismiss.[2]

## II.   ARGUMENT

### A.   The PSLRA Does Not Mandate A Stay Of Discovery

#### 1.   *The PSLRA Stay Provision Does Not Apply To Ripple*

Ripple argues that "this action arises under federal securities law given that Plaintiffs asserted federal securities claims in the SAC against Ripple's co-defendants."  Ripple Mot. at 8.  That is wrong.

The PSLRA states that "[i]n any private action arising under this subchapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss."  15 U.S.C. § 77z-1.  However, Plaintiffs' allegations against Ripple do not arise under the PSLRA.  Indeed, when Plaintiff Toomey filed the original complaint in this matter, he asserted the exact same claims against Ripple that are asserted in the SAC.  *Compare* Class Action Complaint (ECF No. 5) *with* SAC.  Ripple did not request a discovery stay, nor was a stay automatically applied.  On the contrary, a Case Management and Scheduling Order was entered setting a

---

[2] Ripple argues that "[t]his action threatens to undermine years of efforts to conserve judicial resources and proceed in an efficient manner through the consolidation of multiple, similar lawsuits in the California Action."  Ripple Mot. at 3.  That is wrong.  This action is a unique action brought under Florida Blue Sky laws and Florida state law on behalf of Florida purchasers of XRP.  There is no overlap in the claims between this action and the California action.  This fact further undermines Ripple's brazen accusation that this case is somehow a "copycat" action (Ripple Mot. at 1).  That is impossible as this is the only complaint which asserts violation of Florida statutes and common law on behalf of a Florida class.  Ripple's unsupported rhetoric is designed to distract from the fact that Ripple is clearly not entitled to a stay of discovery.

discovery schedule for the case (ECF No. 28).  These steps were taken because the case clearly did not arise under the federal securities laws.  There was not, and is not, any claim against Ripple that implicates the PSLRA.  As such, there is no basis for applying a discovery stay to Ripple under the PSLRA.  *See Koock v. Sugar & Felsenthal, LLP*, 2009 WL 2579307, at *1 (M.D. Fla. Aug. 19, 2009) ("The PSLRA has no application to actions in which only state law claims are alleged.") (Citation omitted); *Hillis v. Heineman*, 2009 WL 798872, at *2 (D. Ariz. Mar. 25, 2009) ("Plaintiffs argue that the PSLRA does not apply because Plaintiffs have asserted no claims under federal securities law. The Court agrees."); *Levinson v. Pscc Servs., Inc.*, 2009 WL 10690157, at *2 (D. Conn. Sept. 16, 2009) ("While it is possible that Plaintiffs could have pled a federal securities law cause of action, the fact is that they did not. Thus, PSLRA's automatic stay provision is not applicable.").

Ripple concedes that it "moves solely to dismiss state law claims asserted against it in the SAC," Ripple Mot. at 8, but nevertheless argues that "the PSLRA provides that 'any' motion to dismiss triggers a stay of discovery in the entire 'action.'"  Not so.  In *Tobias*, the Court considered the question of whether a motion to dismiss triggers a PSLRA stay of state law causes of action where the state law causes of action have an independent basis of jurisdiction (diversity).  *Tobias*, 177 F. Supp. 2d at 164–65.[3]  The court concluded that the state law claims should not be

---

[3] It should be noted that this case is even further removed from *Tobias* as there the plaintiff brought a claim under the federal securities laws against the defendant. *Id.* at 164.  Here, Plaintiffs do not even assert federal securities law claims against Ripple.

stayed.[4]  In reasoning that the PSLRA stay should not apply to the state law claims based in diversity, the court reasoned that the PSLRA is ambiguous because "[i]t is not clear from the face of the statute whether Congress contemplated the situation where both federal question and diversity jurisdiction are invoked in a single action. Conceptually, the claims can be split into two groups: the federal securities fraud claims which are subject to the automatic stay and the state law claims which are not." *Id.* at 165.  Looking to the legislative history to resolve the ambiguity, the court noted that "[t]he PSLRA was passed to redress certain perceived abuses[5] in securities litigation including the abuse of the discovery process to coerce settlement." *Id.* Analyzing these factors, the court determined none applied to the particular facts of the case. *Id.* at 166.

Then, considering the statutory language and legislative history, the court determined that a stay of the state law claims was inappropriate even though the "state law claims arise from the same set of facts as the federal securities claims." *Id.* Specifically, the court stated "[t]he availability of a single forum to hear both federal and state claims should not be diminished by an unduly broad application of a statute which itself is an exception to the usual practice in federal courts—permitting discovery to continue during the pendency of a motion to dismiss. . . . To hold

---

[4] The plaintiff did not seek to lift the discovery stay related to the common law fraud claim. *Id.*

[5] These perceived abuses include "(1) the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability; (2) the targeting of 'deep pocket' defendants: (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys." *Id.*

otherwise would give the PSLRA too broad a brush, sweeping into its purview all related but distinct state law claims brought under diversity jurisdiction." *Id.* at 169.

The same analysis controls here.  There is no federal question as it relates to the claims against Ripple and therefore no pendent or supplemental jurisdiction.  The Court has diversity jurisdiction over the claims against Ripple, as pled in the SAC. *See* SAC at ¶ 30.  The question then becomes whether the legislative bases for a PSLRA stay require staying this matter, which they clearly do not.  The case is clearly meritorious as a motion to dismiss has already been denied in the *Zakinov* action and the PSLRA stay has been lifted.  Applying an additional PSLRA stay in this matter would be nonsensical and would be inconsistent with the legislative purpose of the stay.  Further, the SEC is actively pursuing a case against Ripple for sale of unregistered securities in violation of federal law.  As such, there is no basis to impose an PSLRA stay in this case.[6]

Ripple persists that the "PSLRA stay applies to the entire 'action.'"  Ripple Mot. at 9.  But Ripple's argument contravenes the guidance in *Tobias*.  Other courts have agreed with *Tobias* that a PSLRA stay is not automatically applied to state law claims with an independent jurisdictional basis.  *See Nichting v. DPL Inc.*, 2011 WL 2892945, at *2 (S.D. Ohio July 15, 2011) (quoting *Tobias*, 177 F.Supp.2d at 168) ("As an initial matter, this Court finds that the PSLRA stay does not automatically apply to all state common law claims for the reasons articulated in *Tobias,* and it does

---

[6] Other than Ripple's motion to dismiss state law claims, no other motion to dismiss is pending, or, at this point, contemplated.  Payward, Inc. d/b/a Kraken has been dismissed without prejudice from this action (ECF No. 48), and none of the Crypto.com entities have appeared to date.  As such, Ripple's argument that "even the mere contemplation of a motion to dismiss triggers a stay of discovery under the PSLRA" (Ripple Mot. at 8) is unavailing.

not intend to 'penalize [Plaintiff] for bringing both its federal securities claims and related state common law claims in one federal action.'"); *Seippel v. Sidley, Austin, Brown & Wood LLP*, 2005 WL 388561, at *3 (S.D.N.Y. Feb. 17, 2005) ("As in *Tobias Holdings,* the Court has an independent basis for jurisdiction over the Seippels' state law claims, which do not arise under the federal securities laws. The policies behind the PSLRA's discovery stay provisions do not apply here. The PSLRA stay is intended to prevent defendants from being forced to bear the expense of discovery until after a court has assessed the sufficiency of the complaint."); *Fazio v. Lehman Bros.*, 2002 WL 32121836, at *4 (N.D. Ohio May 16, 2002) ("The Court concludes that *Tobias* controls these cases. Here, like in *Tobias,* this Court has diversity jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. 1332."); *Hillis*, 2009 WL 798872, at *3 ("Plaintiffs do not assert claims under federal securities law. Rather, they constrain their suit to state law claims brought in this Court pursuant to diversity jurisdiction. . . . These claims fall outside the PSLRA's discovery stay.") (Citation omitted).[7]

Therefore, Ripple is not entitled to a PSLRA stay and its motion for a stay under the PSLRA should be rejected.

### 2.  *Plaintiffs Are Not Attempting to Circumvent the PSLRA*

Ripple is clearly not entitled to a stay under the PSLRA for the reasons set forth above.  Perhaps sensing this, Ripple offers several additional pages of

---

[7] Ripple argues that "the PSLRA stay applies to pendant state law claims," and cites various authorities purportedly supporting that contention.  Ripple Mot. at 10.  But Plaintiffs claims are not pendent claims over which the Court has supplemental jurisdiction, as pled in Plaintiffs' SAC.  SAC at ¶ 30.  That is why *Tobias* controls this analysis and why the cases cited by Ripple are inapposite.

unconvincing argument seeking to suggest that Plaintiffs are seeking to circumvent the PSLRA through "artful pleading."  Ripple Mot. at 12.  In doing so, Ripple cites the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  *Id.*  However, SLUSA has no applicability to this case because it only affects "covered securities," which are ones "traded nationally and listed on a regulated national exchange." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 637, 126 S. Ct. 2145, 2151, 165 L. Ed. 2d 92 (2006).  XRP does not fall under this definition because it is not listed on a regulated national exchange.  In short, SLUSA is irrelevant to this case and does not advance the ball for Ripple in seeking to impose a discovery stay on Plaintiffs.

Further, to the extent that Ripple seeks to insinuate that the legislative objectives behind the PSLRA support its argument, such arguments are counterfactual.  Far from being a "fishing expedition," Ripple has lost a motion to dismiss under the federal securities laws and is facing an action from the SEC for violation of federal securities laws.  Plaintiffs' SAC rests on firm ground and is certainly not a "fishing expedition."[8]  Ripple's arguments fail.

## B.   A Stay is Not Warranted Pursuant to this Court's Inherent Powers

Ripple argues that "[a]n independent basis for staying discovery exists because Ripple's Dispositive Motion may completely dispose of this action."  Ripple Mot. at 13.  But that is the case with the vast majority of motions to dismiss, and nevertheless

---

[8] Further, Plaintiffs' claims are based on Florida's Blue Sky laws, Florida consumer protection statutes, and Florida common law on behalf of a class of Florida purchasers of XRP.  These claims are not asserted in the California action, and do not duplicate the California action.  Instead, this matter fills a gap in the California action.  Plaintiffs not pleading overlapping claims is not a circumvention of the PSLRA, as Ripple suggests.

a discovery stay pending a motion to dismiss remains the exception, not the rule.  *See Cabrera*, 331 F.R.D. at 186; *Centennial Bank v. ServisFirst Bank Inc.*, 2016 WL 7423139, at *1 (M.D. Fla. Mar. 23, 2016) ("Defendants are incorrect that discovery generally should be stayed pending the resolution of a motion to dismiss.").

Instead, "[i]n deciding whether to stay discovery pending resolution of a pending motion, the Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Id.* (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)).  In making this determination, the Court will "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Id.* (Citation omitted).  In taking a preliminary peek into the motion to dismiss, courts seek to determine "whether the Plaintiff's claims are meritless." *Cabrera*, 331 F.R.D. at 186; *see also Sprint Sols., Inc. v. Cell Xchange, Inc.*, 49 F. Supp. 3d 1074, 1078 (M.D. Fla. 2014) (explaining "the court must take a 'preliminary peek' at the motion to determine whether the motion appears clearly meritorious and case dispositive"); *Ray v. Spirit Airlines, Inc.*, 2012 WL 5471793, at *2 (S.D. Fla. Nov. 9, 2012) ("Having preliminarily examined the motion to dismiss and the Complaint here, the Court cannot say that this case is surely destined for dismissal.").

Applying this legal standard, Ripple should not be granted a discovery stay because Ripple's motion to dismiss is not "clearly meritorious"; in fact, the opposite is true.  Ripple's main argument in support of dismissal is that it cannot be held liable

under FSIPA because of the alleged absence of privity between Plaintiffs and Ripple. MTD at 18.  Ripple's argument fails.

It is well settled that the Florida Supreme Court's colloquial use of the term "privity," in dicta, does not mean rigid contractual privity is necessary in order to bring a claim under FSIPA.[9] *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 371–73 (S.D. Fla. 1991) ("To read the Florida Supreme Court's statement that '[b]uyer/seller privity is required' in the strict sense which Defendants urge would expressly contravene the explicit statutory language and legislative intent of the provision.").  Ripple is a statutory "seller" of securities under the FSIPA because Ripple solicited the sale of unregistered securities to Plaintiffs and Class members, specifically XRP.  *Id.* at 372 ("One can be liable as a 'seller' or an 'agent' of the seller under Florida law if he in some way solicits the sale of securities."); *Hilliard v. Black*, 125 F. Supp. 2d 1071, 1083 (N.D. Fla. 2000) ("The definition of 'seller' under section 517.211. Florida Statutes, has been expanded to include those who solicit the sale of securities.").  Florida courts look to federal precedent to interpret the meaning of "solicit," specifically to the "Supreme Court's decision in *Pinter v. Dahl,* 486 U.S. 622, 647, 108 S. Ct. 2063, 100 L.Ed.2d 658 (1988) in which the Supreme Court provided that a seller under sections 12(1) and 12(2) of the 1933 Securities and Exchange Act may be one who solicits the purchase of a security and that 'solicits'

---

[9] In using the "privity" verbiage, the Florida Supreme Court was merely seeking to distinguish between the more far-reaching liability under federal regulation 10b-5 and the more-narrow liability under Section 517.211, the latter of which only allows for liability against statutory sellers (including those who solicit the sale of the security) and the officers, directors, partners and agents of the statutory seller who personally participates or aids in the sale.  *In re Sahlen*, 773 F. Supp. at 371–72.

includes one who is 'motivated at least in part by a desire to serve his own financial interests or those of the securities owner.'" *Id.*

Because solicitation liability under FSIPA looks to the federal standard, the *Zakinov* court's analysis of the same issue under the federal standard is directly on point. In *Zakinov*, the court rejected the exact same argument by Ripple[10]:

> Next, while the parties agree that a "seller" within the meaning of § 77l(a)(1) extends to a person who either (1) passes title of the security to the buyer or (2) solicits the purchase with a self-interested financial motive . . . (both citing *Pinter v. Dahl*, 486 U.S. 622, 641-42 (1988)), they disagree about such standard's application to defendants.[] With respect to showing seller status under a solicitation theory, courts acknowledge that "any person who engaged in steps necessary to the distribution of the unregistered security is liable." *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 357-58 (S.D.N.Y. 2019).
>
> Here, plaintiff argues that defendants respectively qualify as "sellers" under the solicitation theory. Significantly, plaintiff alleges that defendants systematically marketed XRP and financially benefited from such efforts. On the latter point, plaintiff alleges that from early 2017 to 2018 alone, defendants "have earned over $1.1 billion through the sale of XRP." . . . On the former point, plaintiff alleges that defendants published various tweets, interviews, and articles pushing the adoption of XRP . . ., hosted conferences concerning XRP's use, . . ., explained on its website how to purchase XRP and included a link to cryptocurrency exchanges for such purchases, . . ., and even began to lobby Congress and the SEC to adopt cryptocurrency friendly laws . . . Such alleged efforts by defendants, if proven, are more than sufficient to establish their status as sellers under a solicitation theory. *Balestra*, 380 F. Supp. 3d at 358 ("These promotional statements trumpeting the potential of the ATB Coin and the ongoing opportunity to invest in the ATB ICO [initial coin offering] ... clearly reflect both [defendants'] efforts to solicit the sale

---

[10] Ripple concedes this point in its MTD.  *See* MTD at 25 n.16.

> of ATB Coins.... I therefore conclude that the allegations set forth in the Complaint plausibly allege that both [defendants] engaged in steps necessary to the distribution of the unregistered security ..."). Given that, plaintiff alleges sufficient facts that defendants qualify as sellers for purpose of plaintiff's § 77l(a)(1) claim. As a result, plaintiff sufficiently alleged his § 77l(a)(1) claims against defendants.

*Zakinov*, 2020 WL 922815, at *12.

Plaintiffs in this matter make identical, and even more robust, allegations regarding Ripple's solicitation of XRP. *See* SAC ¶ 8 ("Through this strategy, the Ripple Defendants have raised well over a billion dollars through the sale of XRP, which has been used to fund the company's operations, as well as substantially enriching Ripple's executives, to the tune of $600 million."); ¶¶ 51-61 (Tweets and public statements from Ripple touting XRP and soliciting investment into the same); ¶ 55 (describing that Ripple hosted conferences concerning XRP use, specifically "a conference called 'Swell' which was a promotional event designed to bolster the value of XRP"); ¶ 71 ("To bolster open market sales, Ripple has also directed all readers of its website to information about 'How to Buy XRP' and has provided a list of digital asset trading platforms, including some with principal places of business in the United States, on which investors can make those purchases."); ¶ 129 ("Ripple publicized the XRP Escrow to investors through Twitter and other online sources for the purpose of soliciting further investment into XRP."); ¶ 60 ("Ripple itself added to the marketing, 'tweeting' on March 24, 2017 that '[t]he price of #XRP continues to surge showing that people are looking for #bitcoin alternatives.' This is one example of several posts in which Ripple marketed XRP as an investment vehicle, soliciting

investors to invest their money in XRP."); ¶ 170 ("Ripple itself publicly noted the importance of XRP being traded on digital asset trading platforms. In articles published on its website on December 21, 2017 and January 18, 2018, Ripple noted: '[I]t's a top priority for Ripple to have XRP listed on top digital asset exchanges. . . . Ripple has dedicated resources to the initiatives so you can expect ongoing progress.' This was part of the Ripple Defendants' efforts to solicit investors to purchase XRP through digital asset trading platforms.").

Regardless, Ripple is still liable for *per se* violations of Florida's Deceptive and Unfair Practices Act ("FDUPTA").  A *"per se* violation of FDUPTA stems from the transgression of '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.' "  *Blair v. Wachovia Mortg. Corp.,* 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (citation omitted).  There can be no dispute that FSIPA and federal securities laws are predicate statutes upon which a *per se* violation of FDUPTA can be based.  *See Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at *7 (S.D. Fla. Aug. 14, 2018) ("Moreover, as the securities laws are designed for consumer protection and proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices, a violation of the securities laws is a *per se* violation of FDUTPA.").  There is no "privity" requirement for a FDUPTA claim, all that is required is a violation of a predicate statute, which unquestionably occurred here.[11]

---

[11] Ripple does not state that it complied with FSIPA's registration requirements, nor was XRP properly registered with the SEC, hence the ongoing lawsuit.

As to the "traditional" FDUPTA violation, Plaintiffs adequately plead that Ripple acted in a deceptive and misleading manner in engaging in material omissions regarding XRP.  *See* SAC ¶ 243; ¶ 250.  Such claims are actionable under FDUPTA. *Hodges*, 2018 WL 9686569, at *8 ("The materially false statements and omissions as described above, and the fact that this was a misleading investment, were unfair and deceptive practices perpetrated on Plaintiffs which would have likely deceived a reasonable person under the circumstances.").  Ripple argues that Plaintiffs' "allegations fail to satisfy Federal Rule of Civil Procedure 9(b) because they do not identify with particularity the information that was misleadingly omitted."  MTD at 25.  While Ripple's argument fails on the merits, even if Ripple were correct this is a pleading deficiency that could be amended, and is not "case dispositive."

As to the unjust enrichment claim, Ripple argues that "since it is plain from the face of the Second Amended Complaint that Plaintiffs are secondary market purchasers, it is not plausible that Plaintiffs transferred any money to Ripple."  MTD at 27.  "But, the 'direct benefit' element of an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary. In other words, a direct benefit can derive from a transaction with no direct *contact*."  *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015).

In light of the foregoing, a "preliminary peek" at Ripple's motion to dismiss does not warrant application of a stay.  Ripple further argues that its pending motion to transfer this case also warrants a discovery stay.  Ripple Mot. at 14.  Ripple's argument fails because Florida federal courts have declined to grant generalized stays

of discovery pending motions to transfer, because the discovery will be required regardless of whether the case is transferred or not.  *See MindbaseHQ LLC v. Google LLC*, 2021 WL 680887, at *2 (S.D. Fla. Feb. 22, 2021) (explaining "with regard to the Motion to Transfer, the Court concludes that, regardless of its ultimate ruling, this motion will not dispose of the entire case or avoid the need to engage in significant and expensive discovery. Rather, any discovery efforts conducted in this case will be equally necessary if the case is ultimately transferred.").

Further, there are significant differences between the California action and the present action that weigh against application of a stay.  First, this case is based on Florida state law on behalf of Florida purchasers of XRP.  Under these circumstances, courts have declined transfer, even if there is a factually-related action in another District.  *See, e.g., Poertner v. Gillette Co.*, 2012 WL 12898875, at *4 (M.D. Fla. July 9, 2012) (rejecting transfer pursuant to the first-to-file rule and 28 U.S.C. § 1404(a) where there was a preceding California action and a subsequent Florida action based on the same underlying factual predicate).  Second, while the California action and this action share an underlying factual predicate, the claims for relief and controlling law are completely different.  The California action brings claims under federal law and California law, whereas this matter asserts claims under FSIPA, FDUPTA, and Florida common law claims.

In sum, Ripple has not met its burden to establish the necessity of a discovery stay, and therefore Ripple's request should be denied.

### C.  A Stay Will Prejudice Plaintiffs

Ripple argues that a stay of this action will not prejudice Plaintiffs.  Ripple Mot. at 16.  That is wrong.  Plaintiffs will be prejudiced by a stay because Crypto.com is comprised of foreign entities that were required to be served through the Hague Convention, which takes considerable time.  There is no reason to stay this case indefinitely against Ripple, especially where there is not even a federal securities claim against Ripple, and it has already been granted a PSLRA stay in the California action and lost its motion to dismiss.  Ripple laments the fact that it has to participate in discovery, but potential prejudice to Ripple is not the only consideration, prejudice to both parties must be considered.  *See Cabrera*, 331 F.R.D. at 186 (explaining that "while a defendant should not be forced to expend substantial resources answering discovery when the plaintiff's claims clearly lack merit, the delay and prolongation of discovery can also create case management and scheduling problems and unfairly hold up the prosecution of the case").

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Ripple's motion to stay discovery in full, and allow discovery to proceed forthwith with regard to Ripple.

Dated:  May 10, 2021                    Respectfully submitted,

                                        **BURSOR & FISHER, P.A.**

                                        By:    _/s/ Sarah N. Westcot_
                                                  Sarah N. Westcot

                                        Sarah N. Westcot (FBN:  1018272)
                                        701 Brickell Avenue, Suite 1420
                                        Miami, FL 33131
                                        Telephone: (305) 330-5512
                                        Facsimile:  (305) 676-9006
                                        Email: swestcot@bursor.com

                                        **BURSOR & FISHER, P.A.**
                                        Andrew J. Obergfell (*pro hac vice*)
                                        888 Seventh Avenue
                                        New York, NY 10019
                                        Telephone: (646) 837-7150
                                        Facsimile: 212-989-9163
                                        Email: aobergfell@bursor.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 10th day of May, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

*/s/ Sarah N. Westcot*
Sarah N. Westcot