**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| TYLER TOOMEY and MARKAS SERGALIS, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>RIPPLE LABS, INC., XRP II, LLC, BRADLEY GARLINGHOUSE, MCO MALTA DAX LIMITED (D/B/A CRYPTO.COM), FORIS DAX GLOBAL LIMITED (D/B/A CRYPTO.COM), FORIS DAX, INC., FORIS, INC.,<br><br>                    Defendants. | Civil Action No. 3:21-cv-00093-BJD-JBT |

**PLAINTIFFS TYLER TOOMEY AND MARKAS SERGALIS' OPPOSITION TO DEFENDANTS RIPPLE LABS INC., XRP II, LLC, AND BRADLEY GARLINGHOUSE'S MOTION TO TRANSFER, DISMISS, OR STAY PLAINTIFFS' SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Sarah N. Westcot (FBN:  1018272)
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

PAGE(S)

I.  INTRODUCTION ................................................................................. 1

II.  RELEVANT BACKGROUND ............................................................. 3

III.  THIS ACTION SHOULD NOT BE TRANSFERRED TO THE
NORTHERN DISTRICT OF CALIFORNIA .................................... 5

A.  Transfer Pursuant To The First-Filed Rule Is Inappropriate .................................. 5

B.  Transfer Pursuant To 28 U.S.C. § 1404 Is Inappropriate ........................................ 7

1.  Transfer to the Northern District of California is Not Justified Based on
Application of the § 1404 Factors ......................................................... 9

a.  Ripple has not made a specific showing of inconvenience to
witnesses and therefore this factor weighs against transfer ......................... 9

b.  Because discovery will be electronic, the location of relevant
documents does not weigh in favor of transfer ........................................... 10

c.  The convenience of the parties factor is neutral and does
not favor transfer ........................................................................... 10

d.  The locus of operative facts factor is neutral and mitigates
against transfer ............................................................................ 11

e.  Ripple has failed to identify any unwilling witnesses ................................. 12

f.  The relative means of the parties factor weighs strongly
against transfer ............................................................................ 12

g.  The forum's familiarity with governing law weighs strongly against
transfer .................................................................................... 13

i.  Trial efficacy and the interests of justice do not weigh in favor
of transfer ................................................................................. 14

IV.  THIS CASE SHOULD NOT BE STAYED ....................................... 15

i

V.      PLAINTIFFS STATE PLAUSIBLE CLAIMS FOR RELIEF
        AGAINST RIPPLE ............................................................................ 16

    A.  Ripple is a Statutory Seller Under FSIPA, and Therefore
        Plaintiffs State A Claim Under Fla. Stat. § 517.211 .............................. 16

    B.  Plaintiffs Plausibly State the Remainder of Their Claims for Relief .................... 21

VI.     CONCLUSION ................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

CASES

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
   457 F. Supp. 2d 474 (S.D.N.Y. 2006) .................................................................. 12

*Balestra v. ATBCOIN LLC*,
   380 F. Supp. 3d 340 (S.D.N.Y. 2019) ...................................................... 18, 20, 21

*Blair v. Wachovia Mortg. Corp.*,
   2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ....................................................... 21

*Catalano v. BMW of N. Am., LLC*,
   2016 WL 884832 (S.D.N.Y. Mar. 1, 2016) ............................................................ 6

*Citibank (S. Dakota) N.A. v. Nat'l Arb. Council, Inc.*,
   2006 WL 2691528 (M.D. Fla. Sept. 19, 2006) ..................................................... 23

*Combs v. Fla. Dep't of Corr.*,
   461 F. Supp. 3d 1203 (N.D. Fla. 2020) ................................................. 11, 12, 14, 15

*Commodores Ent. Corp. v. McClary*,
   324 F. Supp. 3d 1245 (M.D. Fla. 2018), aff'd, 822 F. App'x 904 (11th Cir. 2020) ................. 21

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000) ..................................................................................... 6

*Delorenzo v. HP Enter. Servs., LLC*,
   79 F. Supp. 3d 1277 (M.D. Fla. 2015) ............................................................ 10, 11

*Douglas v. G. E. E. N. Corp.*,
   415 So. 2d 130 (Fla. Dist. Ct. App. 1982) .............................................................. 7

*ESPN, Inc. v. Quiksilver, Inc.*,
   581 F. Supp. 2d 542 (S.D.N.Y. 2008) .................................................................. 13

*Eye Care Int'l, Inc. v. Underhill*,
   119 F. Supp. 2d 1313 (M.D. Fla. 2000) .................................................................. 8

*Frayman v. Douglas Elliman Realty, LLC*,
   2021 WL 299951 (S.D. Fla. Jan. 25, 2021) .......................................................... 24

*Hargrett v. Amazon.com, Inc.*,
   2015 WL 13749695 (M.D. Fla. Oct. 30, 2015) ....................................................... 8

*Harris v. Nordyne, LLC*,
   2014 WL 12516076 (S.D. Fla. Nov. 14, 2014)............................................................ 22, 23

*Hilliard v. Black*,
   125 F. Supp. 2d 1071 (N.D. Fla. 2000).......................................................................... 17

*Hodges v. Harrison*,
   372 F. Supp. 3d 1342 (S.D. Fla. 2019) ........................................................................ 16

*Hodges v. Monkey Cap., LLC*,
   2018 WL 9686569 (S.D. Fla. Aug. 14, 2018)............................................................... 22

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
   773 F. Supp. 342 (S.D. Fla. 1991) ................................................................................ 17

*Laica-Bhoge v. Eli Lilly & Co.*,
   2015 WL 3919515 (M.D. Fla. June 25, 2015)............................................................. 8, 9

*Lan Li v. Walsh*,
   2017 WL 3130388 (S.D. Fla. July 24, 2017)................................................................. 25

*Mason v. Smithkline Beecham Clinical*,
   Lab'ys, 146 F. Supp. 2d 1355 (S.D. Fla. 2001)............................................................. 9

*McVicar v. Standard Insulations, Inc.*,
   824 F.2d 920 (11th Cir.1987) ........................................................................................ 13

*Owens v. Blue Tee Corp.*,
   177 F.R.D. 673 (M.D. Ala. 1998) ................................................................................... 6

*Pinter v. Dahl*,
   486 U.S. 622 (1988)......................................................................................... 18, 20, 21

*Poertner v. Gillette Co.*,
   2012 WL 12898875 (M.D. Fla. July 9, 2012) ........................................................ *passim*

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013)............................................................................. 6

*Rappaport v. Jimmy Bryan Toyota of Fort Lauderdale, Inc.*,
   522 So. 2d 1005 (Fla. Dist. Ct. App. 1988) ................................................................... 7

*Robinson v. Giarmarco & Bill, P.C.*,
   74 F.3d 253 (11th Cir. 1996) ..................................................................................... 8, 14

*Rodriguez v. JPay, Inc.*,
   2019 WL 11624312 n.9 (S.D. Fla. Oct. 21, 2019)......................................................... 22

iv

*S.E.C. v. Tecumseh Holdings Corp.*,
   2009 WL 4975263 (S.D.N.Y. Dec. 22, 2009) ....................................................... 20

*Thomas v. Town of Davie*,
   847 F.2d 771 (11th Cir. 1988) ........................................................................... 25

*Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*,
   761 F. Supp. 2d 1322 (M.D. Fla. 2010) ............................................................... 10

*U.S. ex rel. Clausen v. Lab'y Corp. of Am.*,
   290 F.3d 1301 (11th Cir. 2002) ......................................................................... 24

*Van Dusen v. Barrack*,
   376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) .............................................. 8

*Waterproof Gear, Inc. v. Leisure Pro, Ltd.*,
   2009 WL 1066249 (M.D. Fla. Apr. 20, 2009) ...................................................... 13

*Watson v. Cmty. Educ. Centers, Inc.*,
   2011 WL 3516150 (M.D. Fla. Aug. 11, 2011) ................................................ 10, 11

*Weinberg v. Advanced Data Processing, Inc.*,
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) ............................................................... 24

*Zakinov v. Ripple Labs, Inc.*,
   2020 WL 922815 (N.D. Cal. Feb. 26, 2020) .............................................. *passim*

STATUTES

28 U.S.C. § 1404 ................................................................................. 1, 2, 7, 9

28 U.S.C. § 1404(a) ........................................................................... 7, 8, 9, 12

Fla. Stat.  § 517.211(1) .............................................................................. 17

Fla. Stat. § 501.204 ................................................................................... 13

Fla. Stat. § 517.211 ............................................................................. 16, 17

RULES

Federal Rule of Civil Procedure 9(b) ........................................................... 22, 24

Federal Rule of Civil Procedure 8 .................................................................. 22

v

## I.    INTRODUCTION

Defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse (collectively "Ripple") seek an order transferring this case to the Northern District of California, staying this case pending resolution of class certification in *Zakinov et al v. Ripple Labs, Inc. et al.*, Case No. 4:18-cv-06753-PJH (N.D. Cal) (the "California action"), or dismissing this matter under Rule 12(b)(6) and 9(b).  *See* Defendant Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse's Motion to Transfer, Dismiss, Or Stay Plaintiffs' Second Amended Complaint and Memorandum of Law in Support (ECF No. 45) ("MTD").  Ripple's motion should be denied in its entirety.

First, transfer of this action to the Northern District of California is inappropriate under either the "first-filed rule" or 28 U.S.C. § 1404.  Application of the first-filed rule is inappropriate due to the dissimilarity of the parties and issues between this action and the California action.  Specifically, this case involves different Plaintiffs and different Defendants (this case involves the Crypto.com defendants who are not part of the California action), and includes novel legal claims against Crypto.com that are not alleged or actively being litigated in the California action.  Further, this case involves Florida Plaintiffs[1] bringing claims on behalf of a Florida class under Florida state law.  These are novel claims, requiring unique and independent discovery, that are not being litigated in the California action.  The claims for relief in the two actions are completely dissimilar, and the proposed classes are

---

[1] Plaintiff Toomey has very recently moved to Colorado, but purchased XRP while a Florida resident. Further, as discussed herein, Plaintiff Toomey's choice of forum is entitled to significant weight.

1

not the same.  Further, as no class has been certified in either action, transfer is, at best, premature.

Ripple's argument under § 1404 fares no better. It is settled law in the Eleventh Circuit that Plaintiffs' choice of forum should control unless clearly outweighed by other considerations.  This is particularly true where, as here, Plaintiffs are individuals who purchased the subject security in Florida and are seeking relief under Florida law on behalf of themselves and Florida investors.  Weighing the § 1404 transfer factors, Ripple has failed to carry its burden to establish that the benefits of transfer clearly outweigh Plaintiffs' choice of forum.  Transfer is inappropriate if the transferee forum is just as convenient, or if transfer merely shifts the convenience from one party to another.  The need for different discovery in this action (to establish different legal claims) combined with the fact that Ripple has already proceeded with litigating the *Securities and Exchange Commission v. Ripple Labs, Inc., et al.*, Case No. 1:20-cv-10832 (S.D.N.Y.) (the "SEC action") separately from the California action, all weigh against transfer of this matter.

Ripple's arguments in favor of dismissal under Rule 12(b)(6) and Rule 9(b) fail. Ripple's motion to dismiss does not deny XRP is an unregistered security; instead, Ripple argues that Plaintiffs are not entitled to relief under the Florida Securities and Investor Protection Act ("FSIPA") § 517.211 because Ripple cannot be held liable under a solicitation theory.  But Ripple concedes that courts look to federal law for the purpose of determining solicitation liability under FSIPA.  *See* MTD at 21-22.  Ripple raised the exact same privity/solicitation argument in the California action, and the

Court concluded that the plaintiff stated a claim because Ripple "systematically marketed XRP and financially benefited from such efforts," which was "more than sufficient to establish their status as sellers under a solicitation theory." *See Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020). Plaintiffs' Second Amended Class Action Complaint ("SAC") (ECF No. 26) is replete with similar allegations which clearly state a claim for solicitation liability under FSIPA.

Plaintiffs' other claims are adequately pleaded. Ripple committed *per se* violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") by violating FSIPA and federal securities laws in selling unregistered XRP tokens. Further, Plaintiffs state a claim for a "traditional" FDUPTA violation and claims for fraudulent and negligent misrepresentation and omission because as early as 2012, Ripple knew that XRP could be considered a security and omitted that fact from Plaintiffs and class members, and on top of that made affirmative misrepresentations that XRP was absolutely not a security to assuage investor concerns and ensure that Ripple could continue to monetize its XRP holdings. Finally, Ripple has enriched itself at the expense of Plaintiffs and class members by accepting money or other crypto assets in exchange for XRP which Ripple knew could be considered an unregistered security. As such, Plaintiffs respectfully request that Ripple's MTD be denied in full.

## II.    RELEVANT BACKGROUND

Ripple sold over a billion dollars worth of XRP tokens to investors without registering the same either with the United States Securities and Exchange Commission ("SEC") or with Florida regulators. SAC ¶ 1-2. Ripple knew as early as

2012 that XRP could be considered a security under federal (and by extension Florida) securities laws, but nonetheless proceeded with an unregistered offering of XRP. SAC ¶¶ 197, 250, 255. Ripple actively concealed this fact throughout the duration of the XRP offering. *Id.* On top of that, Ripple made affirmative misrepresentations that XRP was not a security. *See* SAC ¶ 193; *id.* at ¶ 194.

Ripple engaged in extensive solicitation of XRP to fulfill its "twin aims of creating a market for XRP (increasing speculative demand and trading volume) and monetizing its holdings of XRP to finance its operations[.]" SAC ¶ 50. This included a campaign of solicitation via public statements, the creation of the XRP Escrow, monitoring of XRP trading markets, and promotional conferences to tout the value of XRP as an investment and create investor demand for XRP. SAC ¶¶ 49-61, 109-129.

In response, several civil actions arising under federal securities laws and California state law were filed that were ultimately consolidated in the Northern District of California. *See Coffey v. Ripple Labs, Inc., et al.*, Case No. 4:18-cv-03286 (N.D. Cal.) (ECF 1-1) (asserting violations of federal securities laws and California state law); *In re Ripple Labs Inc. Litigation*, 4:18-cv-06753 (N.D. Cal) (ECF No. 63) (asserting violations of federal securities laws and California state law); *Simmons v. Ripple Labs, Inc., et al.*, Case No. 4:20-cv-05127 (N.D. Cal.) (ECF No. 1) (individual action asserting violations of federal securities laws only); *Bitcoin Manipulation Abatement LLC v. Ripple Labs, Inc., et al.*, Case No. 4:20-cv-03022 (N.D. Cal) (ECF No. 1) (asserting violations of federal securities laws and California state law). None of the consolidated cases assert violations of FSIPA or FDUPTA, or bring claims under Florida common law.

4

None of the consolidated actions sought or presently seek to represent a Florida class or even a Florida subclass. Of these filed actions, the only private class action currently pending is the California action, which asserts violations of federal securities laws and California state law.

On December 22, 2020, the SEC brought the SEC action against Ripple Labs, Inc., Bradley Garlinghouse, and Christian A. Larsen alleging violations of federal securities laws. *See* SAC, Ex. A (Ex. 26-1), at ¶ 9.

On January 25, 2021, Plaintiff Tyler Toomey filed a complaint against Defendants Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse alleging violations of FSIPA, *per se* and traditional violations of FDUPTA, and Florida common law claims for fraudulent misrepresentation/omission, negligent misrepresentation/omission, conversion, unjust enrichment, and money had and received. *See* Class Action Complaint (ECF No. 1). On March 26, 2021, Plaintiffs Toomey and Markas Sergalis filed a Second Amended Complaint asserting the same claims against Ripple and adding additional exchange defendants through whom they purchased XRP. *See* SAC.

## III.   THIS ACTION SHOULD NOT BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

### A. Transfer Pursuant To The First-Filed Rule Is Inappropriate

Ripple argues that this "Court should transfer this case to the Northern District of California under . . . the first-filed rule." MTD at 7. That is wrong. "A Court should review three factors in determining whether the first-to-file rule applies: (1) the

chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Poertner v. Gillette Co.*, 2012 WL 12898875, at *1 (M.D. Fla. July 9, 2012).

Here, application of the first-filed rule is inappropriate because there are different parties and different issues in this action as compared with the California action.   First, this matter involves separate plaintiffs seeking to represent distinct classes, and includes additional defendants not present in the California action (the Crypto.com Defendants).  *See Owens v. Blue Tee Corp.*, 177 F.R.D. 673, 679 (M.D. Ala. 1998) ("[T]he court finds that, on the whole, the Alabama Action is not *identical* to the Oklahoma Action. For example, while certain claims may be identical in each action, different parties are named in each. . . .  Accordingly, the court finds that the 'first filed rule' is inapplicable here."); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136 (2d Cir. 2000) ("A court must be careful, when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 540 (S.D.N.Y. 2013) (denying a defendant's motion to stay a putative class action in favor of an earlier-filed action, noting that "the decision of a district court in another district in a case involving different plaintiffs and different law" could not be dispositive of the case pending before him).[2]

---

[2] Similarly, other courts have denied a motion to stay a putative class action in favor of an earlier filed action because there were no "overlapping federal law claims between the two actions" and "resolution of the claims" in the first action were "not dispositive of the claims presented here." *Catalano v. BMW of N. Am., LLC*, 2016 WL 884832, at *7 (S.D.N.Y. Mar. 1, 2016).

Here, Plaintiff Toomey's claim against Crypto.com will require consideration of unique issues that will not otherwise be litigated in the California action.[3]  Even as to Ripple, the claims for relief in this action differ completely from the California action, which require not only separate discovery but also may entitle Florida class members to additional remedies that would not otherwise be captured in the California action.[4]  This lack of overlap between the present action and the California action weighs against application of the first-filed rule because none of the issues related to the Florida causes of action will be litigated in the California action.  Further, just because there is a factual overlap between the two cases does not mean that application of the first-filed rule is warranted.  *See, e.g., Poertner*, 2012 WL 12898875, at *2 ("[T]he claims in each case are distinct. In *Collins,* the claims are based on California state law, whereas in the present case, the claims are based on Florida state law.  Therefore, transfer is not warranted under the first-to-file rule.").[5]

## B.  Transfer Pursuant To 28 U.S.C. § 1404 Is Inappropriate

In determining whether transfer is proper under 28 U.S.C. § 1404(a), the Court

---

[3] Including, for example, whether Crypto.com is/was operating as an unregistered securities exchange in offering XRP tokens for sale.  *See* SAC ¶¶ 11, 292.

[4] For example, FDUPTA remedies are in addition to other remedies, where not duplicative.  *See Douglas v. G. E. E. N. Corp.*, 415 So. 2d 130, 131 (Fla. Dist. Ct. App. 1982) ("If the remedies are not duplicitous, . . . a plaintiff may recover under both a count alleging a violation of the Unfair and Deceptive Trade Practices Act and a count alleging a violation of the federal Truth in Lending Act."). If the fraud claims are successful, punitive damages may be appropriate for Florida class members. *Rappaport v. Jimmy Bryan Toyota of Fort Lauderdale, Inc.*, 522 So. 2d 1005, 1006 (Fla. Dist. Ct. App. 1988) ("Thus, in all cases of fraud the jury is empowered to award punitive damages.")

[5] Application of the first-filed rule is also premature because no class has yet been certified in either action.

must consider "whether various factors are satisfied so as to determine that a transfer
to a more convenient forum is justified." *Poertner*, 2012 WL 12898875, at *2.  These
are:

> (1) the convenience of the witnesses; (2) the location of relevant
> documents and the relative ease of access to sources of proof; (3)
> the convenience of the parties; (4) the locus of operative facts; (5)
> the availability of process to compel the attendance of unwilling
> witnesses; (6) the relative means of the parties; (7) a forum's
> familiarity with the governing law; (8) the weight accorded a
> plaintiff's choice of forum; and (9) trial efficiency and the
> interests of justice, based on the totality of the circumstances.

*Id.* (Citation omitted).  The Eleventh Circuit has made clear that the "plaintiff's choice
of forum should not be disturbed unless it is clearly outweighed by other
considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

"The Eleventh Circuit standard for such a transfer is demanding because the
movant must show the balance of convenience is strongly in favor of the transfer."
*Hargrett v. Amazon.com, Inc.*, 2015 WL 13749695, at *1 (M.D. Fla. Oct. 30, 2015).
"Section 1404(a) provides for transfer to a more convenient forum, not to a forum
likely to prove equally convenient or inconvenient." *Laica-Bhoge v. Eli Lilly & Co.*, 2015
WL 3919515, at *5 (M.D. Fla. June 25, 2015) (quoting *Van Dusen v. Barrack,* 376 U.S.
612, 645–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *Eye Care Int'l, Inc. v. Underhill*, 119
F. Supp. 2d 1313, 1319 (M.D. Fla. 2000) ("Where a transfer merely shifts the
inconvenience from one party to another, Plaintiff's choice of forum should remain.").

1. **Transfer to the Northern District of California is Not Justified Based on Application of the § 1404 Factors**

   a. *Ripple has not made a specific showing of inconvenience to witnesses and therefore this factor weighs against transfer*

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses." *Laica-Bhoge*, 2015 WL 3919515, at *5. "[T]ransfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party. It may also be denied where the movant does not show that the witnesses would be unwilling to testify and that compulsory process would be necessary." *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001).

Here, Ripple, in conclusory fashion, states that "many of the most important witnesses will be the Ripple defendants and Ripple employees located in California." MTD at 14. But Ripple does not identify who these witnesses are or offer any explanation as to why, as party witnesses, they would be unwilling or unable to testify in this District. Conversely, it would be a significant inconvenience for Plaintiff Sergalis, a resident of Clearwater, Florida, to have to go to San Francisco to participate in the case; this is especially true where Plaintiff Sergalis is an individual and Ripple is a company that has significant resources rendering travel far less of an inconvenience. *See* SAC ¶ 21.

### b. *Because discovery will be electronic, the location of relevant documents does not weigh in favor of transfer*

Documents produced in this case will be in electronic format, and therefore this factor does not weigh in favor of transfer to the Northern District of California.  *See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("As the plaintiff notes . . ., the significance of this factor is reduced because technological advancements in electronic document imaging and retrieval minimize the burden of document production."); *Watson v. Cmty. Educ. Centers, Inc.*, 2011 WL 3516150, at *5 (M.D. Fla. Aug. 11, 2011) ("Modern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof and this factor does not provide an independent basis for transfer.").

Once again, Ripple offers little more than boilerplate assertions, arguing that "Ripple's documents are located [in California]."  MTD at 15.  Elsewhere, however, Ripple concedes that in the SEC action the "parties have produced tens of thousands of documents," suggesting that it was not an imposition for Ripple to produce documents in the Southern District of New York.  *See* Declaration of Suzanne E. Nero (ECF No. 46), ¶ 12.  If Ripple could produce tens of thousands of documents 3,000 miles away in New York, there is no reason it can't do the same here.

### c. *The convenience of the parties factor is neutral and does not favor transfer*

"The logical starting point for analyzing the convenience of the parties is a consideration of their residences."  *Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015) (internal quotation marks omitted).  Here, this factor is

neutral because if the case is transferred, Plaintiffs will have to incur the cost and inconvenience of travel, whereas if the case is not transferred Ripple may need to travel to this Court for trial or other relevant proceedings.  Where there is a Florida plaintiff and an out-of-state defendant, Florida courts routinely weigh this factor as neutral and not favoring transfer.  *Id.* at 1284; *Watson*, 2011 WL 3516150, at *5.

**d.  *The locus of operative facts factor is neutral and mitigates against transfer***

Ripple argues that misrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld.  MTD at 14-15.  But that is a myopic view of the full totality of the circumstances.  In complex, multi-party cases such as this one, there are multiple loci of operative facts to be considered.  *See Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1211–12 (N.D. Fla. 2020) ("Some cases will entail multiple loci of operative facts, especially complex cases involving multiple parties. . . Accordingly, not every occurrence relevant to a claim need have occurred in a particular forum to make that forum the locus of operative facts.").

Here, Florida can be said to be one of the loci of operative facts because Plaintiffs Toomey and Sergalis purchased the unregistered XRP in Florida, as did Class members (who consist solely of Florida purchasers of XRP as it relates to Ripple).  Further, Ripple's filings and interactions with Florida regulators is a key issue in this case, any evidence as to Ripple's interactions or filings with Florida regulators will be located in Florida.  Additionally, Crypto.com is comprised of several foreign entities, none of which have any direct connection to California.  As such, given that multiple loci of operative facts exist, this factor is neutral and mitigates against transfer.

11

*Id.* ("When there are multiple loci of operative facts and no single locus is primary in this respect, courts treat this factor neutral in the Section 1404(a) analysis.").

### e. Ripple has failed to identify any unwilling witnesses

As it relates to this factor, the totality of Ripple's argument is contained within one footnote, wherein Ripple argues that the "availability of process to compel potentially unwilling witnesses located in California to testify also weighs in favor of transfer." MTD at 14 n. 7. But Ripple does not explain what witnesses it is talking about, the unnamed witnesses' relevance to the case, or why they would be unwilling to participate in this case in Florida. Similar arguments have been rejected:

> The Defendants have contended that "a subpoena issued by the Central District in California would have the territorial reach to cover more third party witnesses than the Southern District of New York." [. . .] The Defendants fail to substantiate their argument by pointing to any specific witness to suggest that trial in New York would impede the attendance of any of their contemplated witnesses. Indeed, the Defendants do not claim that Plaintiffs' witnesses would be unavailable to testify due to location but rather that "all of defendants' witnesses" are in California. If any of the Defendants' or Plaintiffs' witnesses are unavailable at trial, deposition testimony is a viable alternative, and the Defendants are certainly free to depose all of Plaintiffs' employees and investigators. . . .
>
> Having failed to identify particular unwilling witnesses who might be more available in California than in New York, the Defendants have failed to establish that this factor weighs in their favor.

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478–79 (S.D.N.Y. 2006).

### f. The relative means of the parties factor weighs strongly against transfer

Courts routinely hold that where, as here, the Plaintiffs are individuals bringing

a claim on behalf of Florida consumers against a corporation, like Ripple, with tremendous resources, this factor weighs strongly against transfer. *Poertner*, 2012 WL 12898875, at *3 ("In the present case, the Defendants are large corporations with vast resources, whereas the Plaintiff is an individual seeking to represent a class of Florida consumers. By filing the suit as a class action, the Plaintiff has access to greater resources; however, his resources do not compare to Defendants."). Ripple does not even address this factor in its MTD.

### g. *The forum's familiarity with governing law weighs strongly against transfer*

Where, as here, Plaintiffs assert only Florida state law claims against Ripple, this Court's superior familiarity with governing law weighs strongly against transfer. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008) ("Where, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action."). As one court in this District explained:

> The forum's familiarity with the governing law also weighs against transfer. Waterproof's complaint alleges causes of actions pursuant to violations of Florida law, specifically, a Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, claim as well as a defamation and disparagement claim. The Eleventh Circuit has explained, "The transferee court must apply the law of the state in which the transferor court sits." *McVicar v. Standard Insulations, Inc.,* 824 F.2d 920, 921 (11th Cir.1987). Accordingly, were this case to be transferred to New York, the New York district court would have to apply Florida law to Waterproof's state law claims. A New York district court would not be as familiar with Florida law as a Florida district court would be. . . .

*Waterproof Gear, Inc. v. Leisure Pro, Ltd.*, 2009 WL 1066249, at *6 (M.D. Fla. Apr. 20, 2009).

### h. Plaintiffs' choice of forum weighs heavily against transfer

As set forth above, Plaintiffs' choice of forum is entitled to considerable weight and cannot be set aside unless it is "clearly outweighed" by other considerations. *Robinson*, 74 F.3d at 260. Here, as set forth herein, Ripple has fallen far short of establishing that Plaintiffs' choice of forum is clearly outweighed by other considerations.

### i. Trial efficacy and the interests of justice do not weigh in favor of transfer

"In analyzing this factor, courts consider: (1) where the action is more likely to be expeditiously and efficiently litigated; (2) judicial economy and docket congestion in the competing districts or divisions; (3) each party's ability to enforce a judgment; (4) whether transfer would allow for a consolidation of litigation; (5) the relationship of each community to the controversy; and (6) any obstacles to a fair trial that the parties may encounter in the competing venues." *Combs*, 461 F. Supp. 3d at 1215.

Applying these subfactors, transfer is not warranted. First, this action is more likely to be expeditiously and efficiently litigated in this District because this District has a shorter average period from filing to trial (by nearly two years) than the Northern District of California, and less pending cases.[6] As such, judicial economy favors the Middle District of Florida. Second, even if the cases were consolidated, Plaintiffs' complaint would still need to be litigated separately as it has separate claims for relief from the California action that require proof of different elements and therefore require

---

[6] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2020.pdf (last visited 5/12/21) (N.D. Cal statistics appear on page 66, M.D. Florida on page 91).

different discovery.  <u>Third</u>, since Plaintiffs are seeking to vindicate their rights under Florida law, Florida courts have an interest in adjudicating the controversy.  Finally, Ripple has not identified any impediment to a fair trial in this District.

## IV.   THIS CASE SHOULD NOT BE STAYED

Ripple alternatively argues for a stay of all proceedings pending a decision on class certification in the California Action.  MTD at 16.  Ripple's request should be denied.  Just because two cases may overlap in subject matter does not render them "duplicative."[7]  MTD at 17.  "[T]he general rule is that a suit is duplicative of another suit if the parties, issues and available relief do not significantly differ between the two actions."  *Id.*  "The moving party bears the burden of establishing that a stay is appropriate."  *Poertner*, 2012 WL 12898875, at *4.  Under this standard, the present matter and the California action cannot be considered "duplicative."

As discussed in Point III.A., above, the parties are not the same between the present action and the California action and the issues are not duplicative because the present action involves alleged violations of Florida law, whereas the California action involves violations of federal law and California state law.  Faced with near identical circumstances, another court in this district declined issue a stay:

> Defendants assert that the factual and legal issues and the relief sought in this case and in *Collins* are the same or essentially the same; therefore, a stay is warranted. While the present action does rely on the same set of facts as *Collins*, the actions involve different plaintiffs and different substantive laws. The present case is brought on behalf of a class of Florida plaintiffs while *Collins* is brought on behalf of a class of California

---

[7] For example, the California action and the SEC action are proceeding simultaneously in two separate districts even though there is overlapping subject matter between the two suits.

> plaintiffs. The outcome of Collins, which is based on California state law, is not binding on the present case, which is based on Florida state law. Accordingly, the claims are not sufficiently "duplicative" to warrant a stay of Plaintiff's Claims. Even if the claims were duplicative, the scope of Defendants Motion to Stay is not sufficiently definite and the Defendant's motion shall be denied.

*Poertner*, 2012 WL 12898875, at *4.

## V.    PLAINTIFFS STATE PLAUSIBLE CLAIMS FOR RELIEF AGAINST RIPPLE

### A. Ripple is a Statutory Seller Under FSIPA, and Therefore Plaintiffs State A Claim Under Fla. Stat. § 517.211

Ripple argues that "Plaintiffs fail to state a claim under FSIPA because they fail to allege that Ripple was either the 'person making the sale' of the XRP that Plaintiffs' purchased, or that it was the direct seller's agent." MTD at 18.  That is wrong.  Ripple is a statutory seller under FSIPA because it solicited the sale of XRP to Plaintiffs and other investors.

In order to prevail on a claim of an unregistered sale under FSIPA, Plaintiffs must establish that "(1) [the] contracts sold by [Defendants] were securities; (2) these securities were not registered with the State of Florida; and (3) Defendants sold such unregistered securities." *Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1350 (S.D. Fla. 2019).  Ripple does not contest the first two elements, but instead seeks to sidestep liability by arguing that it cannot be held liable as a "seller" under FSIPA, a position contrary to established law which has already been directly rejected in the California action (applying federal law, which FSIPA looks to for solicitation liability).

Under FSIPA, liability for sale of an unregistered security flows to 1) the

statutory "seller" and 2) "every director, officer, partner, or agent of or for the seller." Fla. Stat. § 517.211(1). Ripple wrongfully reads the statute as requiring rigid contractual privity. MTD at 18. But "[t]o read the Florida Supreme Court's statement that '[b]uyer/seller privity is required' in the strict sense which Defendants urge would expressly contravene the explicit statutory language and legislative intent of the provision." *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 371–73 (S.D. Fla. 1991). Looking to the federal standard for guidance, the *Sahlen* court explained that "[o]ne can be liable as a 'seller' . . . under Florida law if he in some way solicits the sale of securities." *Id.* at 372 n.40; s*ee id.* ("[T]his Court determines that conduct sufficient to constitute solicitation for the purposes of satisfying § 517.211 liability is similar to that deemed sufficient by the Supreme Court in *Pinter v. Dahl* to hold one liable as a 'seller' under § 12(2) of the Securities Act of 1933."); *see also Hilliard v. Black*, 125 F. Supp. 2d 1071, 1083 (N.D. Fla. 2000) ("The definition of 'seller' under section 517.211. Florida Statutes, has been expanded to include those who solicit the sale of securities."). If solicitation liability attaches, the "buyer/seller" privity requirement is deemed satisfied. *Hilliard*, 125 F. Supp. 2d at 1083 ("Plaintiffs' have sufficiently alleged that Defendants were soliciting the sale of Cash 4 Title securities and that buyer/seller privity was present.").

Because solicitation liability under FSIPA looks to the federal standard, the *Zakinov* court's analysis of the same issue under the federal standard is directly on point. In *Zakinov*, the court rejected the exact same argument by Ripple:

> Next, while the parties agree that a "seller" within the

meaning of § 77l(a)(1) extends to a person who either (1) passes title of the security to the buyer or (2) solicits the purchase with a self-interested financial motive . . . (both citing *Pinter v. Dahl*, 486 U.S. 622, 641-42 (1988)), they disagree about such standard's application to defendants.[]  With respect to showing seller status under a solicitation theory, courts acknowledge that "any person who engaged in steps necessary to the distribution of the unregistered security is liable." *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 357-58 (S.D.N.Y. 2019).

Here, plaintiff argues that defendants respectively qualify as "sellers" under the solicitation theory. Significantly, plaintiff alleges that defendants systematically marketed XRP and financially benefited from such efforts. On the latter point, plaintiff alleges that from early 2017 to 2018 alone, defendants "have earned over $1.1 billion through the sale of XRP." . . . On the former point, plaintiff alleges that defendants published various tweets, interviews, and articles pushing the adoption of XRP . . ., hosted conferences concerning XRP's use, . . ., explained on its website how to purchase XRP and included a link to cryptocurrency exchanges for such purchases, . . ., and even began to lobby Congress and the SEC to adopt cryptocurrency friendly laws . . . Such alleged efforts by defendants, if proven, are more than sufficient to establish their status as sellers under a solicitation theory. *Balestra*, 380 F. Supp. 3d at 358 ("These promotional statements trumpeting the potential of the ATB Coin and the ongoing opportunity to invest in the ATB ICO [initial coin offering] ... clearly reflect both [defendants'] efforts to solicit the sale of ATB Coins.... I therefore conclude that the allegations set forth in the Complaint plausibly allege that both [defendants] engaged in steps necessary to the distribution of the unregistered security ..."). Given that, plaintiff alleges sufficient facts that defendants qualify as sellers for purpose of plaintiff's § 77l(a)(1) claim. As a result, plaintiff sufficiently alleged his § 77l(a)(1) claims against defendants.

*Zakinov*, 2020 WL 922815, at *12.

Plaintiffs in this matter make identical, and even more robust, allegations

regarding Ripple's solicitation of XRP. *See* SAC ¶ 8 ("Through this strategy, the Ripple Defendants have raised well over a billion dollars through the sale of XRP, which has been used to fund the company's operations, as well as substantially enriching Ripple's executives, to the tune of $600 million."); ¶¶ 51-61 (Tweets and public statements from Ripple touting XRP and soliciting investment into the same); ¶ 55 (describing that Ripple hosted conferences concerning XRP use, specifically "a conference called 'Swell' which was a promotional event designed to bolster the value of XRP"); ¶ 71 ("To bolster open market sales, Ripple has also directed all readers of its website to information about 'How to Buy XRP' and has provided a list of digital asset trading platforms, including some with principal places of business in the United States, on which investors can make those purchases."); ¶ 129 ("Ripple publicized the XRP Escrow to investors through Twitter and other online sources for the purpose of soliciting further investment into XRP."); ¶ 60 ("Ripple itself added to the marketing, 'tweeting' on March 24, 2017 that '[t]he price of #XRP continues to surge showing that people are looking for #bitcoin alternatives.' This is one example of several posts in which Ripple marketed XRP as an investment vehicle, soliciting investors to invest their money in XRP."); ¶ 170 ("Ripple itself publicly noted the importance of XRP being traded on digital asset trading platforms. In articles published on its website on December 21, 2017 and January 18, 2018, Ripple noted: '[I]t's a top priority for Ripple to have XRP listed on top digital asset exchanges. . . . Ripple has dedicated resources to the initiatives so you can expect ongoing progress.' This was part of the Ripple Defendants' efforts to solicit investors to purchase XRP through digital asset trading

platforms.").[8]

Ripple rehashes its failed argument in the California action by arguing that *"Pinter* made clear that Section 12 imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller."  MTD at 22 n. 13 (citation omitted).  The California court rejected this argument:

> [D]efendants cite a footnote from *Pinter* stating that "§ 12(1) imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." . . . Defendant failed to explain how this statement (tucked away in a footnote to a section discussing which sellers may be held liable for passing title to a security) limits its recognition that a person may separately be found liable under a solicitation theory. *Id.* at 644 ("The [actual purchase of a security] requirement, however, does not exclude solicitation from the category of activities that may render a person liable when a sale has taken place."). Without more, the court rejects any suggestion that defendants may not be held liable under a solicitation theory because they are remote sellers.[9]

*Zakinov*, 2020 WL 922815, at *12.[10]

Ripple gained a direct financial benefit from its solicitation activities.  Not only did Ripple reap well over a billion U.S. dollars from sales of XRP (SAC ¶ 2), but Ripple

---

[8] While not required, it is of note that Plaintiffs Toomey and Sergalis both in fact reviewed information promulgated by or on behalf of Ripple in choosing to invest in XRP.  *See* SAC ¶¶ 20-21.

[9] Ripple's argument, taken at face value, would essentially neutralize solicitation liability.  Specifically, Ripple argues that *"Pinter* cabined solicitation liability to solely those sellers from whom the buyer purchase[d]."  MTD at 22 (citation omitted).  If that were true, direct seller liability and solicitation liability would be one in the same, rendering solicitation liability meaningless.

[10] The California court's determination is firmly grounded in the case law.  *See Balestra*, 380 F. Supp. 3d at 357 (" 'Liability does not require that the defendant actually passed title of the security'; rather, '[a]ny person who 'engaged in steps necessary to the distribution' of the unregistered security is liable.' ") (quoting *S.E.C. v. Tecumseh Holdings Corp.*, 2009 WL 4975263, at *3 (S.D.N.Y. Dec. 22, 2009)).

also holds approximately 55 billion XRP in escrow and therefore derives a direct benefit from increased demand and trading volume of XRP because it provides market value for the large amount of XRP held by Ripple for Ripple to sell in the future.  SAC ¶¶ 124, 126.  Indeed, Ripple itself admitted as much, namely the importance of availability of XRP on exchanges to drive market demand and increase the value of XRP.  SAC ¶ 170.  Thus, in soliciting investor purchases of XRP, Ripple was "motivated at least in part by a desire to serve [its] own financial interests . . ." *Balestra*, 380 F. Supp. 3d at 357 (quoting *Pinter*, 486 U.S. at 643).  Because Ripple is a statutory seller under a solicitation theory, Ripple's motion to dismiss the FSIPA claim should be denied.

## B. Plaintiffs Plausibly State the Remainder of Their Claims for Relief

First, as to FDUPTA, Plaintiffs must satisfy three elements in order to state a claim for relief:  "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Commodores Ent. Corp. v. McClary*, 324 F. Supp. 3d 1245, 1252 (M.D. Fla. 2018), *aff'd*, 822 F. App'x 904 (11th Cir. 2020).  FDUPTA can be violated in two ways: 1) a *per se* violation based on a violation of a predicate statute, and 2) a "traditional" violation.

A *"per se* violation of FDUPTA stems from the transgression of '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.' "  *Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (citation omitted).  FSIPA and federal securities laws are predicate statutes upon which a *per se* violation of

FDUPTA can be based.  *See Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at *7 (S.D. Fla. Aug. 14, 2018) ("[A]s the securities laws are designed for consumer protection and proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices, a violation of the securities laws is a *per se* violation of FDUTPA."). There is no "privity" requirement for a FDUPTA claim, all that is required is a violation of a predicate statute, which unquestionably occurred here.[11] Plaintiffs allege predicate violations of FSIPA and federal securities laws, to wit the 33 Act.  *See* SAC ¶ 245.

Ripple mounts no real opposition to this, arguing that "Plaintiffs fail to state a claim that Ripple violated FSIPA."  MTD at 26.   That is wrong for the reasons explained in Section V.A., above.  Further, Ripple does not even attempt to argue that it complied with the 33 Act or that the 33 Act is not a predicate statute for a *per se* FDUPTA violation, nor can it in light of the *Zakinov* decision.

Plaintiffs also state a claim for a "traditional" FDUPTA violation.[12]  FDUPTA's "coverage is 'extremely broad,' and has been applied to class action claims alleging failure to disclose relatively benign product defects."  *Harris*, 2014 WL 12516076, at

---

[11] Ripple does not state that it complied with FSIPA's registration requirements, nor was XRP properly registered with the SEC, hence the ongoing lawsuit.

[12] Ripple argues that Plaintiffs' allegations "fail to satisfy Federal Rule of Civil Procedure 9(b) because they do not identify with particularity the information that was misleadingly omitted."  MTD at 25. However, there is a split of authority as to whether FDUPTA claims are governed by Rule 8 or Rule 9(b).  *Rodriguez v. JPay, Inc.*, 2019 WL 11624312, at *7 n.9 (S.D. Fla. Oct. 21, 2019).  Plaintiffs contend that the Rule 8 standard should apply, as "requiring plaintiffs to plead FDUPTA claims with particularity would not advance the primary goals of Rule 9(b).  FDUTPA's elements are more particularized than those of common law fraud."  *Harris v. Nordyne, LLC*, 2014 WL 12516076, at *5 (S.D. Fla. Nov. 14, 2014).  Regardless, as set forth above, Plaintiffs state a claim under either standard.

*6; *see also Citibank (S. Dakota) N.A. v. Nat'l Arb. Council, Inc.*, 2006 WL 2691528, at *3 (M.D. Fla. Sept. 19, 2006) ("Since FDUTPA does not clearly define what constitutes 'unfair and deceptive,' courts have held that the statute should be construed liberally, and that the concept should be regarded as extremely broad.") (Citation omitted); *see also* SAC ¶ 242.

Here, Ripple knew that XRP could be considered a security before ever selling XRP.   SAC ¶¶ 6, 197, 250.   XRP's classification was a material fact because unregistered sale of the same rendered the sale illegal and detrimental to the value of XRP as an investment vehicle.   SAC ¶¶ 6, 255.   Indeed, after the SEC brought its lawsuit, the value of XRP fell precipitously and major exchanges delisted XRP, which caused harm to investors like Plaintiffs.   SAC ¶¶ 7, 20-21.   Throughout the XRP offering, and at all times aware that XRP could be classified as a security, Ripple engaged in material misrepresentations and omissions by failing to disclose that XRP was in fact a security, or even that investors should be aware of the risk that it could be considered a security.   SAC ¶ 255; SAC ¶¶ 192-194.   Plaintiffs pled reliance.   SAC ¶¶ 20-21 ("Had Plaintiff[] known that XRP was in fact an unregistered security, he would have been aware of that fact and would not have purchased XRP."); SAC ¶¶ 253, 257.   In the end, as a result of its scheme, Ripple and its executives were substantially enriched to Plaintiffs' and Class members' detriment.   SAC ¶¶ 2, 8. [13]

---

[13] These allegations are more than sufficient to meet the particularity requirements of Rule 9(b).  *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and

Second, for the same reasons, Plaintiffs satisfy the requirements of Rule 9(b), and state a claim for fraudulent and negligent misrepresentation. Defendant argues that Ripple did not have the "requisite level of scienter" with regard to its misrepresentations that XRP was not a security. MTD at 26. But that is belied by the allegations in the SAC, which affirmatively state that Ripple knew that XRP was, or at minimum could be considered to be, a security (SAC ¶¶ 6, 197, 250), and nonetheless made affirmative representations to investors that XRP was "absolutely . . . not a security" and that Ripple was "100 percent clear, it's not a security." SAC ¶ 193. Those statements are false, and amount to actionable fraud.

Third, as to unjust enrichment[14], Ripple argues that "since it is plain from the face of the [SAC] that Plaintiffs are secondary market purchasers, it is not plausible that Plaintiffs transferred any money to Ripple." MTD at 27. "But, the 'direct benefit' element of an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary. In other words, a direct benefit can derive from a transaction with no direct *contact*." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015).[15]

---

the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.") (Citation omitted).

[14] Under Florida law, claims for unjust enrichment and money had and received are analyzed under the same legal framework. *Frayman v. Douglas Elliman Realty, LLC*, 2021 WL 299951, at *15 (S.D. Fla. Jan. 25, 2021).

[15] As to conversion, "[u]nder Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." Lan Li v. Walsh, 2017 WL 3130388, at *6 (S.D. Fla. July 24, 2017) (citation omitted). Ripple has enriched itself and its executives at the expense of Plaintiffs and class members who have funneled resources to

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Ripple's MTD in its entirety.  Should the Court determine that any of Plaintiffs' claims are deficient, Plaintiffs respectfully request leave to amend to remedy any pleading deficiencies.  *See Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).

Dated:  May 26, 2021                  Respectfully submitted,

                                      **BURSOR & FISHER, P.A.**

                                      By:      */s/ Sarah N. Westcot*
                                               Sarah N. Westcot

                                      Sarah N. Westcot (FBN:  1018272)
                                      701 Brickell Avenue, Suite 1420
                                      Miami, FL 33131
                                      Telephone: (305) 330-5512
                                      Facsimile:  (305) 676-9006
                                      Email: swestcot@bursor.com

                                      **BURSOR & FISHER, P.A.**
                                      Andrew J. Obergfell (*pro hac vice*)
                                      888 Seventh Avenue
                                      New York, NY 10019
                                      Telephone: (646) 837-7150
                                      Facsimile: 212-989-9163
                                      Email: aobergfell@bursor.com

---

Ripple for purchase of XRP.  Plaintiffs have adequately plead a cause of action for conversion.  See SAC ¶ 259-264.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 26th day of May, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

By: ____*/s/ Sarah N. Westcot*____
Sarah N. Westcot